JOHN FRASER et al. v. LEAH J. SEELEY et al.

No. 14,031.   (79 Pac. 1081.)

SYLLABUS BY THE COURT.

1. JUDICIAL SALES—*Inadequate Price of Non-exempt Property —Effect on Homestead.* Land occupied as a homestead by a debtor, together with two other tracts, was encumbered by a mortgage which was foreclosed, and the non-exempt property ordered to be sold first, which was done. The non-exempt land brought a price much less than its true value. A motion of the judgment debtor to set aside the sale was based on the claim that the low price at which the non-exempt land sold cast on the homestead property an unjust proportion of the judgment. *Held,* that, under the redemption law of 1893 (Gen. Stat. 1901, sec. 4927 *et seq.*), by redeeming the non-exempt property for the amount at which it sold, and converting it into money at its actual value, the difference would be available to apply to the redemption of the homestead, and that the debtor was not prejudiced.

2. ——— *Value of Redemption Right Increased.* The value of a debtor's right to redeem from a sale of his lands upon execution is increased in inverse proportion to the low price at which the property is bid in by the purchaser.

3. ——— *Notice of Sale Sufficient.* A sheriff's notice of sale which did not recite that lands would be sold in separate parcels held to be sufficient although the decree ordering the sale provided that the several tracts should be sold separately. (Gen. Stat. 1901, sec. 4905.)

4. ——— *False Return of Sheriff—Creditor Estopped and Debtor Not Prejudiced.* A judgment creditor was represented at the sheriff's sale by her attorney. The debtor's land was bid in by a second mortgagee. The sheriff returned that the property was sold "for cash in hand." The judg-

ment creditor moved to confirm the sale, and on the hearing it appeared that the purchaser paid nothing but the costs. The sale was confirmed. *Held,* that the plaintiff, the judgment creditor, was estopped from claiming that the judgment debt was not satisfied to the extent of the bid returned by the sheriff, and that the debtor was not prejudiced.

5. ——— *"Public Auction" Means "Highest Bidder."* A sheriff's return that property was sold by him at public auction implies that it was disposed of to the highest bidder.

Error from Greenwood district court; GRANVILLE P. AIKMAN, judge. Opinion filed March 11, 1905. Affirmed.

*C. W. Shinn,* and *A. L. Redden,* for plaintiffs in error.

*Howard J. Hodgson,* for defendants in error.

The opinion of the court was delivered by

WILLIAM R. SMITH, J.: This proceeding in error is prosecuted to reverse an order of the district court confirming a sheriff's sale of real estate sold under a decree of foreclosure.

A judgment was entered against plaintiffs in error foreclosing two mortgages, one held by Leah J. Seeley, amounting, with interest, at the date of the decree, to $6289; another, subject to the first, held by Charles E. Moore for $260. The mortgages were liens on three tracts of land, one of which was occupied as a homestead by the mortgagors (plaintiffs in error). It was directed in the decree that the land other than the homestead be first sold, and if it should fail to bring the amount of the mortgage liens then the homestead property should be sold.

On November 23, 1903, the sheriff sold the land to Charles E. Moore, the second mortgagee. The homestead brought $6005, and the other two tracts were bid in by him for $500 each. The sheriff's return recites that the properties were sold "for cash in hand." Leah

J. Seeley filed a motion to confirm the sale, and John Fraser and wife, the mortgagors, moved to set it aside. The sale was confirmed by the court and a sheriff's deed ordered to be executed and delivered to the purchaser after the expiration of eighteen months,.the redemption period.

It is claimed that the lands other than the homestead were sold for a grossly inadequate price, thereby casting on the homestead an unjust proportion of the judgment, making the sale contrary to equity and the spirit of our homestead laws. There is no complaint that the price at which the homestead sold was too low. Testimony was introduced tending to show that the lands not exempt were worth $5000. There was no tender, however, of a bid exceeding the amount which the sheriff received for them. The argument is that as the total amount due at the time of sale, including costs, was about $6770, there remained, after deducting the price at which the outside lands were sold, about $5770 on the homestead, making it practically impossible for the debtors to save it, whereas, if the lands other than the homestead had sold for two-thirds their value, as shown by the testimony introduced on the motion by plaintiffs in error, there would have remained a lien on the homestead for about $3440 only.

It is contended that the redemption law of 1893 changed the rule theretofore existing respecting the confirmation of judicial sales, and that the court is required to do more than merely examine the proceedings of the officer to satisfy itself that the sale was made in conformity with law, and that now it must find, before confirmation,. that the proceedings were regular and "in conformity with law and equity." Section 26 of chapter 109, Laws of 1893 (Gen. Stat. 1901, § 4952), reads:

"The sheriff shall at once make a return of all sales made under this act to the court; and the court, if it

finds the proceedings regular and in conformity with law and equity, shall confirm the same, and direct that the clerk make an entry upon the journal that the court finds that the sale has in all respects been made in conformity to law, and order that the sheriff make to the purchaser the certificate of sale or deed provided for in section 1 of this act."

It may be conceded that a material change was made in the law by the section just quoted. The inequities of which plaintiffs in error complain, however, are apparent more than real. By section 4928 of the General Statutes of 1901 the owner of real estate sold under special execution, as this was sold, may redeem the property at any time within eighteen months for the amount for which it was sold, together with interest, costs, and taxes. If the two tracts of land not exempt to the owner as a homestead are worth $5000, as defendants below claim, they are benefitted by the right given them to redeem, which they can do by paying $1000, together with interest, costs, and taxes. Estimating the costs, interest and taxes at $500 the owner by redemption of his non-exempt lands would profit to the extent of $3500. By the application of this amount, with $2270 added, the homestead can be redeemed; so that the low price at which the outside real estate was sold works no substantial injustice to the mortgagors. Furthermore, the statute protects land once redeemed from liability for any balance due on the judgment or decree under which the same is sold. (Gen. Stat. 1901, § 4949.)

In the case of *Power v. Larabee,* 3 N. Dak. 502, 505, 57 N. W. 789, 44 Am. St. Rep. 577, real estate worth $6800 was sold on execution for $96. A motion of the debtor to vacate the sale was sustained. This ruling was reversed by the supreme court, although it was held that the inadequacy of price was so gross as to shock the conscience. Speaking of the effect of such

Fraser v. Seeley.

a sale, under a law of that state giving the execution debtor one year to redeem, the court said:

"Where his title is divested at the sale, his only remedy to protect himself from loss is by attacking the sale itself.  But, where a right to redeem after the sale is vested in him by statute, it is not necessary for him to attack the sale to save a sacrifice of his property.  Indeed, he will always find it more to his advantage to redeem.  By redemption he can wipe out the sale, and destroy the lien of the judgment upon the land, for a trifling sum in comparison with the value of the property on which the judgment was a lien.  If the amount bid is less than the amount of the judgment, the defendant, by redemption, secures the same benefit which would accrue to him should the plaintiff voluntarily release the land from the lien of the judgment on payment of only a portion thereof, the land on which it was a lien being worth many times the amount so paid.  Where the defendant has full knowledge of the sale, and an opportunity to redeem, the injustice resulting from a sale for an inadequate price will fall, if at all, upon the plaintiff, who may find that the defendant has by redemption secured the release of very valuable property from the lien of a judgment on the payment of a paltry sum upon redemption, leaving the greater portion of the judgment unsecured."

In the case quoted from eleven distinct tracts of land were sold in a lump without an attempt to offer them separately, in flagrant violation of the statute.  This disobedience of the law was held not to avoid the sale, in view of the right of redemption afforded the execution debtor.

In the case of *Watt et al. v. McGalliard et al.,* 67 Ill. 513, 517, land worth $3500 was struck off to the complainant in the suit for $384.70.  On a bill filed to compel a resale, and for a decree permitting redemption, the court said:

"At judicial sales, where there is a redemption, it is a well-known fact that lands, unless where necessary to secure the debt, are rarely sold at anything approximating their real value.  Such purchases are

not looked upon as a desirable mode of investment. There is seldom competition. The creditor, for the most part, has to take the land in satisfaction of his debt and wait for it to be redeemed."

(See, also, *Coolbaugh v. Roemer,* 32 Minn. 445, 21 N. W. 472; *Mixer et al. v. Sibley et al.,* 53 Ill. 61.)

The next point raised against confirmation of the sale is that the notice published by the sheriff was insufficient for the reason that there was nothing in it indicating that the lands would be sold in separate parcels, as directed by the decree. It is a sufficient answer to this objection to say that section 4905 of the General Statutes of 1901, which provides for notices of sale in such cases, does not require that the advertisement state that the lands will be sold separately.

There is nothing substantial in the claim that the notice was not published continuously for thirty days prior to the day of sale. The testimony was disputed on the question. The affidavit of the printer attached to the return shows that the notice was published in conformity with law. 'It was expressly found that the lands were duly and legally advertised for sale. We must uphold the ruling of the district court on that point.

It is next claimed that the purchaser did not pay for the lands, but that he gave in lieu of money a promise that he (Moore) would release his judgment, amounting to $260. The sheriff's return showed that he sold the property "for cash in hand." On this return Leah J. Seeley, the judgment creditor, moved to confirm the sale, which was done at her instance. We do not think it concerns the judgment debtor whether she actually received the money or not. She is not complaining.

Leah J. Seeley was represented by her attorney at the sheriff's sale when the land was bid off by Charles E. Moore. She in this way was informed of the nature

Fraser v. Seeley.

of the bid and amount thereof.   Afterward, on December 19, 1903, she filed her motion to confirm the sale, affirming that it was regular in all respects and in conformity with law, and praying that a certificate of purchase issue to Charles E. Moore.   On January 2, 1904, John Fraser and wife, mortgagors and judgment debtors, filed their motion to set aside the sale on seven grounds, the third being "that the purchase-price for which said lands were sold has not been paid by said purchaser."   On January 15, 1904, both motions were heard together by consent.   Plaintiffs in error called the sheriff as a witness.   He testified that Moore, the purchaser, paid nothing on his bid but the costs.   With this knowledge plaintiff below still insisted on the confirmation and induced the court to act favorably on her motion.   She is now effectually estopped from asserting that her judgment against the Frasers is not satisfied.   (See *M'Ghee v. Ellis and Browning,* 4 Litt. [Ky.] 245, 14 Am. Dec. 124; *Harper v. Fox,* 7 Watts & Serg. [Pa.] 142.)

There is no merit in the claim that the return of the sheriff did not show that the property was sold to the highest bidder.   It did recite that the lands were sold at public auction.   This implies that they went to the highest bidder.   (Bouv. "Auction.")

The action of the court below in confirming the sale is approved and affirmed.

All the Justices concurring.