No. 29,204.

The Bankers Mortgage Company of Topeka, *Appellant,*
v. B. F. Dole et al., *Appellees.*

(286 Pac. 258.)

Opinion filed April 5, 1930.

*G. F. Gratton,* of McPherson, *Samuel E. Bartlett* and *George D. Miner,* both of Ellsworth, for the appellant.

*W. H. Carpenter, W. R. Carpenter,* both of Marion, and *James A. Cassler,* of McPherson, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action in ejectment wherein the plaintiff, the Bankers Mortgage Company, a corporation, alleged that it had a legal estate in a section of McPherson county land and was entitled to its possession and that the defendant B. F. Dole and certain members of his family unlawfully withheld its possession.

The pleaded defense was a general denial.

Plaintiff's title was based upon a sheriff's deed issued pursuant to

its purchase of the land at foreclosure sale. The principal defense was that the land had been redeemed and the judgment satisfied of record. The evidence covered a lengthy chronicle of mortgages, mortgage foreclosures and the sheriff's sales thereunder, and of redemptions from such sales by substantial payments of cash and by the acceptance of a new mortgage to satisfy deficiency judgments, interest and costs, and matters pertinent thereto.

The jury answered a number of special questions and returned a general verdict for defendants. Judgment was entered accordingly. Plaintiff appeals, assigning various errors.

At the outset in their brief counsel for plaintiff stress the importance of getting a correct grasp of the complicated facts. In that we agree, and to acquire such an understanding the court has repeatedly read the voluminous abstract, counter abstract, appellant's brief, brief of appellee, appellant's supplemental abstract and reply brief, and supplemental brief of appellee. From these we deduce the controlling facts to have been substantially as follows:

For a number of years prior to the incidents which culminated in this particular lawsuit, the defendant B. F. Dole owned a section of land (sec. 1, T. 19 S., R. 1 W.) in McPherson county on its eastern border. His homestead was on that section, and perhaps the homesteads of two adult sons also—but this latter fact was contested and may not have to be determined. He also owned a section of land immediately adjacent thereto on the east in Marion county (sec. 6, T. 19 S., R. 1 E.). He also owned forty acres immediately north of his McPherson county section (SW¼ SW¼, sec. 36, T. 18, R. 1 W.). All these lands were encumbered with various different mortgages; and in 1925 to 1927, owing to defaults, some of these mortgages were foreclosed. A mortgage for $1,600 and interest, covering the isolated forty acres in section 36, township 18, range 1 west, was foreclosed about 1925. Section 6 in Marion county was covered by a first mortgage for $17,500 held by the Putnam Investment Company, which figures in this lawsuit but is not one of the several mortgages foreclosed. The Bankers Mortgage Company held a mortgage on section 1 of McPherson county and a second mortgage on the north half and the southwest quarter of section 6 in Marion county to secure the payment of an indebtedness of $13,200 and interest. All this land was also subject to a junior lien for the sum of $780.64 and interest, and the entire section 6 in Marion county was also subject to other junior liens for $1,259.15 and

$1,455.68 respectively. On December 31, 1926, judgment in foreclosure of both the Marion and McPherson sections was decreed in favor of the Bankers Mortgage Company for the sums set ·out above, and separate orders of sale were issued to the sheriffs of Marion and McPherson counties. Pursuant thereto, on February 21, 1927, the McPherson county section was sold at sheriff's sale to the Bankers Mortgage Company for $12,000; and on the same day the Marion county section was likewise sold to the same purchaser for $3,000, subject to the first mortgage of the Putnam Investment Company. On June 8, 1926, the Bankers Mortgage Company had procured an assignment of the first mortgage on the Marion county section for $17,500 held by the Putnam Investment Company, and thereby became its owner.

Sometime in the summer of 1927 Dole negotiated a sale of 240 acres of the Marion county section (E½ NW¼ and NE¼) to Henry Jantz for $16,500; and in Dole's behalf Westbrook, cashier of the State Bank of Canton, wrote to plaintiff offering to turn over that sum less commission and expenses, and suggesting its acceptance and the taking of a new mortgage covering the remaining 400 acres of the section. Plaintiff answered expressing pleasure at the fortunate turn in Mr. Dole's affairs, and submitted a counter proposal to this effect: It expressed its readiness to accept the net proceeds of the sale to be applied thus: "(1) to the deficiency judgment; (2) to the amount remaining to redeem; (3) to the interest on $17,500; (4) to the principal of the first mortgage of $17,500."

In the same letter, dated August 18, 1927, plaintiff expressed its readiness to carry back the balance due on the judgment under which the two sections had been foreclosed and sold, a new mortgage to be given therefor on the remaining 400 acres of the Marion county section and the 40 acres in section 38, township 16, range 1 west— 440 acres in all. Part of this letter reads:

"It might be well for you to call Mr. Dole's attention to the fact that the 40 acres on which we made a loan of $1,600 a sheriff's deed will be issued to us for this particular land under our foreclosure the last of this month, and it occurred to me that since Mr. Dole was able to sell this land for this price that he might prefer to have the amount of our judgment, together with interest on this 40, included in our mortgage to be carried back on the 400 acres and make our mortgage cover the 440 acres."

Considerable correspondence passed thereafter between the plain-

tiff and the different officers of the State Bank of Canton touching the details of this matter. The letters tend to show that the parties did not exactly understand each other, which may be partly explained by the fact that different persons participated in the correspondence, Westbrook and Anderson for Dole, and Cave, president, and Fleming, secretary, for the plaintiff company. Dole himself was an elderly man who had been adjudged a feeble-minded person in 1918, and two of his sons had been appointed guardians of his estate, but they do not figure in this lawsuit in that capacity. Be that as it may, negotiations did go forward upon the general lines of the correspondence indicated above, and on August 24, 1927, plaintiff wrote to the sheriff of McPherson county:

"Answering your favor of the 17th relative execution in the Dole case, . . . There are some negotiations now pending which if carried through as planned would result in the judgment on which execution was issued being paid.

"It will be satisfactory with us if you will hold execution until you hear from us further. . . .                     J. A. FLEMING, Secretary."

On October 7, 1927, plaintiff accepted a remittance of $15,938.32, being the net proceeds of the sale of 240 acres of section 6 in Marion county to Henry Jantz, and accepted a new mortgage for $13,275 from Dole and wife, dated September 12, 1927, on 440 acres consisting of the remaining 400 acres of section 6 and on the 40 acres in section 36, township 18, range 1 west. On the same day an entry of satisfaction of the judgment in the district of Marion county rendered on December 31, 1926, pursuant to which the two sections of land had been sold in foreclosure, was made as follows:

"Satisfied in full this October 7, 1927.—J. A. FLEMING, Atty. for Bankers Mortgage Company."

The three junior judgments for the smaller amounts rendered at the same time contained identical entries of satisfaction. The clerk of the court testified as to the circumstances under which Fleming as attorney for the plaintiff made these entries of satisfaction and signed the judgment record.

It does not appear that any later communication passed between the plaintiff and the sheriff of McPherson county, or that the latter was notified that the judgment had been satisfied of record on October 7, 1927; and on August 24, 1928, the sheriff executed to plaintiff a sheriff's deed to section 1, McPherson county, pursuant to its purchase at sheriff's sale eighteen months previously. This deed was filed for record three days later, August 27, 1928. On October

30, 1928, plaintiff procured a writ of assistance to dispossess the defendants, B. F. Dole and wife and others. That proceeding brought a joinder of issues, a trial, and a judgment in favor of defendants. Thereafter the present action in ejectment was begun.

There is an argument in plaintiff's brief to the effect that in the correspondence leading up to the acceptance of the $15,938.22 and the new mortgage of $13,275 it was plaintiff's proposition that only the redemption of section 6 in Marion county from its foreclosure sale for $3,000 was contemplated, and that after satisfying the deficiency judgment, the $3,000 redemption, and interest in default on the $17,500 mortgage, whatever was left of the $15,938.42 should be applied towards the extinction of the outstanding first mortgage of $17,500; and that nothing was intended to be done about the redemption of section 1 in McPherson county which had been sold under the same judgment. Why any sane man should set about the payment of a mortgage not due for several years, and let his home farm and the farms of his two sons (all included in section 1) go to sheriff's deed for a mere fraction of its value cannot be conceived; and it is not surprising that the jury rejected that construction of the negotiations and the doings of the parties. The reasonable interpretation of the terms proposed by plaintiff—at least the interpretation Dole had a right to put upon them—was that "the amount remaining to redeem" meant the total amount, $12,000 on section 1 and $3,000 on section 6. Touching the cryptic line: "(2) to the amount remaining to redeem," which plaintiff's correspondents so punctiliously reiterated in their letters to Dole's bankers, counsel repeatedly take pains in their brief to explain its meaning to this court, viz.: "Second amount necessary to redeem, $3,000." And again: "Second amount necessary to redeem (sec. 6-19-1, E. Marion Co.), $3,000."

How easy it would have been to have similarly amplified the line, "to the amount remaining to redeem," so that Dole would also have understood that it was only intended to devote enough of the $15,938.22 to redeem the Marion land and not the McPherson land. Given the interpretation that plaintiff intended—that after paying the deficiency judgment of $2,632.36 and the $3,000 required to redeem section 6 and interest and costs out of the remittance of $15,938.22, the balance should be applied toward the extinction of the $17,500 first mortgage on section 6 not yet due, and that Dole should let section 1 go by the board for good and all for a fraction

of its value—would be a travesty on justice which this court would be loath to countenance. There is an eleméntary rule of law that where one party to a contract is privileged to set down in writing the terms to which another party is to give assent, and a controversy arises as to their meaning, the contract should be construed strictly against the writer and liberally toward the other party. (*Graff v. Osborne*, 56 Kan. 162, 42 Pac. 704, syl. ¶ 1; Anson on Contracts, [4th American ed.] 426.)

In plaintiff's endeavors to account for the proper application of the $15,938.22 in cash and the new note and mortgage for $13,275 which it received from defendants in the autumn of 1927 and which culminated in the entries of satisfaction of the judgments in foreclosure of sections 1 and 6 in the Marion county district court, by Fleming, secretary and attorney for the plaintiff on October 7, 1927, plaintiff argues that the entire unforeclosed Putnam mortgage of $17,500 was paid off, and that such was the purport and intention of its correspondence with the local bankers who acted for Dole. That contention must be greatly discounted because of the fact that on the very day the settlement was wound up, October 7, 1927, and obviously as a part of that settlement, plaintiff made a partial release of 240 acres of section 6 covered by that $17,500 mortgage— the 240 acres released being the northeast quarter and the east half, northwest quarter, which Dole had sold to Henry Jantz, by means of which the large sum of $15,938.22 was delivered to plaintiff. This release contained this significant language:

"PARTIAL RELEASE OF MORTGAGE.

"Filed Oct. 7, 1927. . . .

". . . The Bankers Mortgage Company . . . acknowledges satisfaction of and releases the certain mortgage dated December 6, 1924, for $17,500 made by Benjamin F. Dole and Cynthia A. Dole, his wife, to the Putnam Investment Company in so far as the same covers the following-described lands situated in Marion county, Kansas, to wit:

"The northeast quarter and the east half of the northwest quarter of section 6, township 19, range 1, . . . ; *Provided, however, that said lien shall be and remain upon the balance of the land therein described the same as though this release had not been executed.*" [Italics ours.]

If the entire mortgage for $17,500 was satisfied by the settlement of October 7, 1927, of course the release would not have been a partial one, nor would the concluding [italicized] lines of the release have been at all appropriate. Another significant incident

was that the $17,500 note and mortgage were never surrendered to Dole. Without attempting to summarize all of the evidence in favor of defendants and by no means ignoring the astute and plausible argument of counsel for appellant, we think we have sufficiently shown that the main issue of fact was one for the jury's determination, and that the verdict and special findings were supported by substantial evidence. Plaintiff does have one ground of criticism on account of the jury's answer to special question No. 10:

". . . State when, where, in what manner, and by what means he [Dole] redeemed the said land from the said sheriff's sale.

"A. . . . . Before August 21, 1928, in Marion county court. By payments; mortgage of $13,275, cashier's check $15,938.32, $7,201 check at Farmers Bank of Canton by Lundgreen, and balance by check given by W. M. Anderson."

The check for $7,201.87 was given to release another quarter section of the land covered by the new mortgage for $13,275. The incident occurred on July 28, 1928, many months after the conclusion of transactions relied on to prove the redemption of section 1. That sum was not necessary to consummate its redemption. Counsel for appellees concede that the inclusion of this item in the jury's answer is erroneous, but it is not at all prejudicial. The facts of this check did have some probative bearing on the main issue in this respect: It was shown that plaintiff had not given credit on the new note and mortgage for $13,275 for any part of the $7,201.87, and consequently it did tend to discredit the methods practiced by plaintiffs in relation to their mortgage business.

Passing briefly to the legal questions suggested by appellant, it is urged that defendants did not comply with the statutory provisions for payment of the judgment and redemption of the property sold in foreclosure. But plaintiff concedes that the Marion county land was redeemed, and, of course, whatever method of payment and redemption was sufficient to redeem the Marion land was equally sufficient to redeem the McPherson land. Under the rule announced in *Hess v. Conway*, 92 Kan. 787, 142 Pac. 253, the court must hold that plaintiff was estopped to question the legal sufficiency of the method used to redeem the land in controversy.

It is also gravely contended that the judgment is inequitable, and that defendants are unjustly enriched thereby, and that it will cause financial loss and injury to plaintiff. We discern neither of these features in the judgment. If in its eagerness to acquire for

a fraction of its value a section of McPherson county land with the homes of three families thereon, and to strengthen its position in the proceedings for a writ of assistance to dispossess these defendants, plaintiff has fumbled somewhat with respect to its $17,500 Putnam mortgage, that is plaintiff's affair and no fault of these defendants. Even so, if or when that mortgage or whatever balance is still due thereon becomes a subject of judicial controversy, equity will not fail to do justice between the parties. The record does not show the value of section 1, but at the prices paid for other Dole lands in that locality which the evidence did reveal, it should be worth from $35,200 to $41,600, and probably a good deal more. An aggravated case of unjust enrichment would certainly appear if the trial court had felt impelled to hold that section 1 had not been redeemed from the foreclosure sale at the ruinously inadequate price of $12,000.

The interesting question whether plaintiff's defeat in its lawsuit with the Doles growing out of the issuance of the writ of assistance was *res adjudicata* and should have halted the present protracted and complicated action at its inception need not be determined. Neither is it necessary to consider if section 1 had not been redeemed whether the rights of the sons of Dole and their spouses in parts of section 1 would have been barred by the Marion county judgment of December 31, 1926, in which they were not parties.

The other matters urged upon our attention by the litigants have been carefully considered but do not warrant further discussion.

The judgment is affirmed.