No. 35,784

W. G. WITHRODER, *Appellant*, v. HENRY P. WIEDERODER, *Appellee*, and IDA MARY COPAS, *Cross-appellant*.

(134 P. 2d 381)

Opinion filed March 6, 1943.

S. S. Alexander, of Kingman, argued the cause for the appellant.

H. R. Branine, of Hutchinson, argued the cause, and Walter F. Jones, C. E. Chalfant and J. Richards Hunter, all of Hutchinson, were on the briefs for the appellee and cross-appellant.

The opinion of the court was delivered by

DAWSON, C. J.: This was an action by the plaintiff against his brother and sister to quiet his title to 80 acres of Reno county land. The defendants filed separate answers and cross petitions in which they prayed to have separate undivided one-fifth interests in the land quieted in them.

Plaintiff prevailed against his sister but failed against his brother. Hence, this appeal and cross appeal, to an understanding of which the material facts, in their least controversial aspects, must be stated at some length.

In 1903 the late Charles and Catherine Wiederoder, husband and wife, resided in Reno county, where they had amassed a considerable amount of property. They had three sons, W. G., Henry P., and Charles Edward, and two daughters, Anna May and Ida Mary—all minors between nine and eighteen years of age at that time. Domestic discord developed between the parents, and Catherine filed a suit for divorce. That suit was settled out of court and the action dismissed. In that settlement Charles Wiederoder agreed to convey a life interest in a quarter section of Reno county land (NW ¼, 1-23-10 W) to Catherine his wife, and the remainder interest therein to their five children share and share alike. Charles executed a deed to the land accordingly and the deed was recorded July 7, 1903.

Apparently this effort to achieve permanent domestic peace did not succeed. On March 14, 1904, Catherine again filed suit for divorce. In her petition which contained proper allegations to state such a cause of action she also alleged that a prior action for divorce had been begun between the parties, and that she had signed an agreement with her husband, but that such agreement was not fairly made, and that the amount of property which she had received under its terms was less than one-twentieth of the value of the property which had been jointly accumulated by the efforts of herself and husband. She prayed for a divorce and for a division of the property standing in his name.

On issues joined the cause was tried and decided in Catherine's favor. In the award of property the judgment decreed to her four

quarter sections of land in fee simple, one of which was the quarter section to which the husband had already made the deed referred to above—conveying a life interest to Catherine and remainder in fee to the five children. The judgment and decree of divorce was rendered on March 8, 1905, and affirmed by this court without opinion on July 7, 1906. Catherine outlived her ex-husband for many years. The status of her title to the 80 acres now in dispute (S ½ NW ¼, 1-23-10 W) was never a subject of any concern until 1926, when a lease of it for oil and gas was sought, and the prospective lessees informed her that the signatures of her sons and daughters and their spouses would be required. Catherine then expressed the opinion that their signatures were unnecessary, and to confirm her opinion she and her sons Henry and Charles examined the divorce decree of 1905 which recited that this land (and three other quarter sections) were awarded to her in fee simple. The trial court found that at that time, in 1926 or 1927, Catherine believed she owned the land in fee simple.

· On February 1, 1928, Catherine executed warranty deeds to various tracts of land to each of her children—the north half of NW ¼, 1-23-10 W to her daughter, Mrs. Ida Mary Copas, and the south half of that quarter section, which is the 80 acres involved in this lawsuit, to the plaintiff W. G. Withroder. Deeds to other tracts were executed by Catherine to her daughter Anna May and to her other sons Henry and Charles at the same time. All these deeds were placed in the State Bank of Sylvia to be delivered to the named grantees after Catherine's death. She died in 1930, and the Sylvia banker delivered the deeds accordingly.

Following the death of Catherine plaintiff resided in Oklahoma, but he received all the farm rentals on the 80 acres in controversy, likewise the oil and gas lease delay rentals therefor. Part of the time his sister Ida collected the rents, paid the taxes, and paid over to plaintiff the balance. His brother Henry served in the same capacity and in the same way for part of the time.

Plaintiff's brother Charles and his sister Anna May at sometime conveyed or quitclaimed their interest in the 80 acres to plaintiff. In 1933, Ida Mary Copas mailed to plaintiff at Beaver, Okla., a deed with the request that he execute and return it to her. By its terms it would convey to Ida any and all interest plaintiff might have in the north 80 acres of the quarter section which had been the subject of the deed of 1903 to Catherine for life and remainder

in fee to her five children. It was also, of course, the 80 acres con-
veyed to Ida by her mother's deed of 1928 delivered to her in 1930
by the Sylvia banker. Thus far our statement contains no fact of
material dispute. Now, however, a sharply contested matter enters
our narrative. Plaintiff alleged and averred that accompanying
the deed his sister mailed to him for execution was a letter from her
in which she said that she would execute a similar deed to him con-
veying any interest she might have in the *south* eighty acres of the
same quarter section. Ida disputed plaintiff's version of that trans-
action, and this became the main issue of fact in the cross action
between them.

When oil development became active in the vicinity of the 80
acres involved, this action was begun. On issues joined the cause
was tried by the court, which made findings of fact and conclusions
of law too lengthy for inclusion here, but the substance of them
was that Ida had agreed in writing to quitclaim to plaintiff her
interest in the 80 acres in controversy if plaintiff would quitclaim
to her his interest in the north 80 acres of the same quarter section;
that plaintiff and wife had complied with Ida's proposition but that
Ida had failed to keep her part of the bargain, and that plaintiff's
title should be quieted against her. The trial court also quieted
Henry's title to an undivided one-fifth interest in the 80 acres in
dispute. These rulings became the judgment of the court and the
parties adversely affected thereby, plaintiff and Ida Mary Copas,
bring their separate appeals here for review.

Plaintiff relies principally for his title on the deed executed to
him by his mother, which the Sylvia banker delivered to him after
her death. He cites the decree divorcing his father and mother in
1905, in which there was a division of property which included the
quarter section, the south half of which is of present concern—the
court's decree declaring that it was awarded to her in fee simple.
But at the time that decree was entered, Charles Wiederoder had
already deeded away that quarter section, conveying a life estate
to Catherine and the remainder in fee to the five children of the
warring couple. So the recital in the divorce decree giving her that
quarter section in fee was nothing more than idle words, particu-
larly so far as the then vested interests of her children were con-
cerned. Indeed in her divorce petition filed in 1904, in which she
complained of coercion which had forced her to agree to the settle-
ment of 1903, and of the grossly inadequate division of her hus-

band's property then conveyed to her, she did not ask that that contract be set aside nor did she offer to reconvey the life interest. She kept it, and obtained other lands in the decree of 1904. So far as concerned herself, in the quarter century of her life that followed, it made little or no difference to her whether she was the life tenant or the owner in fee. When the matter of leasing the land for oil and gas in 1926 or 1927 brought the question to her attention, the legal status of the title—whatever it was—was not changed until she died. The deeds to her children delivered to them by the Sylvia banker doubtless did convey specific and exclusive interests in her other lands to her sons Henry and Charles and to her daughter Anna; but ever since 1903 her three sons and two daughters had been the record title holders of the remainder interest in the NW¼, 1-23-10 W, the north half of which she deeded to Ida and the south half (the 80 acres involved) to this plaintiff, so their mother's deeds to them conveyed nothing whatever.

It must be clear, we think, that the remainder interests of Catherine's children under their father's deed of 1903 continued intact until her life estate terminated at her death. (*Menger v. Carruthers*, 57 Kan. 425, 46 Pac. 712; *Peck v. Ayres*, 79 Kan. 457, 100 Pac. 283.) Certainly the remaindermen not being impleaded in the divorce action in 1904, the award of their property to their mother in fee simple in that divorce decree did not and could not affect their interests. (33 C. J. 1106-1107.) The cases are rare where the property interests of third parties, even children of the litigants, are involved in the division of property in a divorce case, although perhaps it could be done as suggested in *Mitchell v. Mitchell*, 267 Ill. 244, 108 N. W. 298, in syllabus three of which it was said:

"Where a husband and wife, for the purpose of making provision for the separate maintenance of the wife, execute a contract and a deed conveying a life estate in a farm to the wife with remainder to her minor children, and the wife subsequently files a bill to rescind the transaction for fraud on the ground that the deed should have conveyed her a fee, the children are interested in sustaining the conveyance as to the remainder, and as the defendant cannot be placed *in statu quo* without setting aside the deed as a whole, the children should be made parties."

But see, also, *Hipple v. Hipple*, 121 Kan. 495, 499, 247 Pac. 650, and *Ayers v. Graff*, 153 Kan. 209, 109 P. 2d 202.

The brief for plaintiff refers to the statute which makes a Kansas wife the owner of an inchoate interest in all the lands of her hus-

band, other than the homestead, to which he had held title during the marriage unless she joined with him in the execution of conveyances thereto—if she survives her husband. (G. S. 1935, 22-108.) We cannot see that this statute has any bearing on the present controversy. Catherine had long ceased to be the wife of Charles Wiederoder before he died, so the fact that she did not join in the deed of 1903 which conveyed the remainder interest in the land is of no consequence. Moreover, in this state a deed directly from a husband to a wife, or from a wife to a husband, without the circuitous maneuver of passing the title through a third party intermediary, has been recognized as valid and conveying full title for three quarters of a century. (*Ogden v. Walters,* 12 Kan. 282, 290; *Sproul v. Atchison National Bank,* 22 Kan. 336, 339.)

A suggestion is made that from 1926 onwards Catherine and plaintiff as her grantee held adversely to defendants for the full statutory time to perfect title by adverse possession. (G. S. 1935, 60-304, 4th clause.) We think not. While Catherine in 1926 expressed her belief that she held title in fee simple by virtue of the judgment in the divorce action there is no substantial evidence that she ever claimed adversely to her children or that they were apprised of any such claim. Moreover, after Catherine's death, while plaintiff's brothers and sisters permitted him to enjoy the net income of the property, on one occasion they very effectively did assert their interest in the property by causing a tenant whom plaintiff had ousted to be reinstated in his tenancy. No theory of adverse possession could stand up against an evidentiary circumstance of such potency.

It seems clear that insofar as the judgment holds that Henry P. Wiederoder owns an undivided one-fifth interest in the 80 acres in dispute, the judgment of the trial court is unassailable.

Turning briefly to the appeal of Ida Mary Copas, the testimony which the trial court chose to believe, as well as the evidentiary circumstances, were quite sufficient to support the trial court's finding that she had promised in writing to convey her interest in the *south* 80 acres if the plaintiff would convey his interest in the *north* 80 acres of the quarter section. He performed; she did not. And while she denied making such promise, she did not try to enlighten the court as to the nature of the *quid pro quo* she gave or paid to plaintiff for his deed to her. Indeed, the record indicates that she merely refrained from keeping her bargain with her brother because she

thought he was not a good business man and would not hang on to the property. One of her brothers testified:

"She [Ida Mary Copas] said that Bill had sent her the deed to sign and wanted to know if I was going to sign it. . . .

"She said she felt like that Bill needed it, but she figured if she deeded it to him he would probably spend it and the children wouldn't get nothing out of it. That is the substance of her talk."

It is argued, however, that the contract for the exchange of deeds between Ida and plaintiff occurred in 1933, and this action was not begun until 1941, a matter of eight years; consequently the action was barred in five years under some provision of the statute of limitations. (G. S. 1935, 60-306.) We think not. Plaintiff was in possession, consequently he was entitled to bring an action to quiet title at any time his convenience or necessity might require. If he had been out of possession, there might have been a talking point that an action for specific performance would have been barred. In the instant case, however, the plaintiff labored under no such difficulty. Ida's written promise to convey and plaintiff's performance of his part of the contract gave him the equitable title to what had theretofore been her interest (51 C. J. 169, 172, 177), and under our civil code possession alone will give a right of action to quiet title. (G. S. 1935, 60-1801; *Brenner v. Bigelow,* 8 Kan. 496, syl. ¶ 2; *Leonard v. Wills,* 24 Kan. 231; *Lasley v. Stout,* 90 Kan. 712, 136 Pac. 249.) See, also, annotation to *Freeman v. Funk,* 85 Kan. 473, 117 Pac. 1024, in 46 L. R. A., n. s. 502, 503.

There are, indeed, some well-known exceptions to the rule that a quiet title action can be brought at any time, as in *Templing v. Bennett,* ante, p. 68, 131 P. 2d 904; but the ordinary rule clearly applies in the case at bar.

We conclude that no error inhered in so much of the judgment as quieted plaintiff's title against his sister Ida.

The judgment is affirmed in all its parts.