No. 44,940

ELEANORE NICHOLAS AGUILERA, *Appellee*, v. VIVIAN M. CORKILL and ELMERETTA D. LITTLE, *Appellants*.

(439 P. 2d 93)

Opinion filed April 6, 1968.

*Frank C. Norton*, of Salina, argued the cause and *Robert L. Constable*, of Salina, was with him on the brief for the appellants.

*Marion W. Chipman*, of Olathe, argued the cause and *Thomas Brown*, of Topeka, was with him on the brief for the appellee.

The opinion of the court was delivered by

FROMME, J.: This action was brought to establish title and determine the right of possession to forty acres of land in Ottawa County, Kansas.

The plaintiff, Eleanore Nicholas Aguilera, claims title by virtue of the will of her grandfather, Newman P. Nicholas.

The defendants, Vivian M. Corkill and Elmeretta D. Little, hold possession and claim title through J. W. Walmsley, now deceased.

Plaintiff obtained judgment below and the defendants have appealed. We will continue to refer to the parties as plaintiff and defendants. The following factual background is necessary to understand the respective claims of the parties.

Newman P. Nicholas died testate in 1905 owning the forty acres of land in fee simple. The pertinent provisions of his will read:

"I give and devise to my son, Earl E. for his natural life with remainder over to his children forever, the following described land lying and situate in the County of Ottawa, and State of Kansas, to-wit: NW¼ of SW¼ of 26-11-3, and other property provided if my son Earl shall die without leaving children surviving him, then I direct that said real estate shall revert unto my son William to be held by him as provided in section 'second' above."

Plaintiff is the only child of the son, Earl E. (Nicholas), named in the will. Earl E. Nicholas died in 1964 and three months later plaintiff filed the present action.

After Earl E. Nicholas inherited the life estate in this property his interest was sold on execution to the Gage brothers. They held the property for twenty-four years. On May 20, 1939, the Gage brothers conveyed the Earl E. Nicholas life estate to the plaintiff by quitclaim deed. On this same day the plaintiff executed and delivered a mortgage on the forty acres to J. W. Walmsley. It should be remembered that J. W. Walmsley is the predecessor in title to the defendants.

The mortgage purported to cover all the estate, title and interest of the plaintiff. Default in payment occurred and a foreclosure action was filed in 1942 against the plaintiff and her husband. Certain irregularities in this foreclosure action will be mentioned later. Suffice it to say the action resulted in judgment and a sale of the premises to J. W. Walmsley, who received a sheriff's deed in 1943.

J. W. Walmsley died in 1956 and all his interest in the land was devised to his wife. Shortly thereafter the wife conveyed the land by quitclaim deed to her daughters, the defendants herein. The defendants remained in possession of the land until the present action was filed.

As previously mentioned Earl E. Nicholas died March 15, 1964. He left surviving one child, the plaintiff, who was born in 1912.

Defendants' claim, in summary, is as follows. Plaintiff owned a remainder interest in the land by the will of her grandfather at the time she acquired her father's preceding life estate. The mortgage executed and delivered by her on May 20, 1939, covered both estates and these were foreclosed by J. W. Walmsley. The devise from Walmsley and the quitclaim deed from his wife transferred the fee to these defendants.

Plaintiff contends and the trial court found the mortgage to J. W. Walmsley covered only an estate for the life of Earl E. Nicholas. The life estate held by the defendants terminated on the death of the life tenant and plaintiff is now the owner of the property under the terms of the will of Newman P. Nicholas.

As we view this controversy the outcome must depend upon the legal force and effect of the J. W. Walmsley foreclosure action. The mortgage and the foreclosure proceeding up to and including the sheriff's sale appear to cover the entire title to this forty acres. J. W. Walmsley, who filed the action and purchased the property at the sheriff's sale, filed a motion to confirm the sale and requested the court, ". . . to fix the equity of redemption at six months from the date of sale."

A notice of hearing on this motion for confirmation in part reads:

"You will take notice that the plaintiff has filed his motion in the above entitled case to confirm the sale of real estate which was foreclosed and sold by the Sheriff, and will further ask at said hearing that the equity of redemption be fixed at six months instead of eighteen for the reason that said loan of money to you by the plaintiff with which to purchase said land was for the full value paid and that you had not paid any part of the principal at the time of foreclosure or as provided by R. S. 60-3466."

The redemption period at that time was eighteen months (G. S. 1935, 60-3439), but in the case of a purchase money mortgage given for the purchase price of any real estate the redemption period could be reduced under certain circumstances to six months. (G. S. 1935, 60-3466.) The interest purchased by the plaintiff was a life estate.

The motion was presented to the court and the decree of confirmation in part provided:

"It is, therefore, considered, ordered and adjudged by the court, that the clerk made an entry on the Journal of said court that the court is satisfied with the legality of said sale, as to the life interest of Earl E. Nicholas in and to said land which shall terminate upon the death of said Earl E. Nicholas, and that said sale and proceedings as to the life estate of said Earl E. Nicholas in and to said land be and the same are hereby approved and confirmed; and

it is further ordered, that L. B. Fetters, Sheriff of said county of Ottawa, make and execute to the purchaser thereof at said sale a certificate of sale as required by law for the life estate of Earl E. Nicholas for the premises so sold. And it is further ordered and adjudged by the court that unless redemption be made of said real property on or before six months from date of sale that the Sheriff of said county of Ottawa is hereby ordered to execute and deliver to the legal holder of said certificate a good and sufficient deed to the real property herein described."

The judge's notes taken from the trial docket are similar in import to the decree of confirmation.

However, the sheriff's deed issued to J. W. Walmsley did not limit the estate conveyed. It outlined the steps taken in the action to authorize the deed and purported to "convey unto said J. W. Walmsley his heirs and assigns, forever, the said land and tenements so sold as aforesaid." The description of property in the deed covered the NW¼ of the SW¼ of Section 26, Township 11 south, Range 3 west of the 6 p. m. in Ottawa County, Kansas.

A sale of property on foreclosure is a judicial sale as distinguished from an execution sale. In *Lambert Lumber Co. v. Petrie*, 191 Kan. 709, 383 P. 2d 518, it was said:

". . . The chief differences between execution and judicial sales are that the former are based on a general judgment for so much money, while the latter are based on an order to sell specific property; the former are conducted by an officer of the law in pursuance of the directions of a statute, while the latter are made by the agent of a court in pursuance of the directions of the court; in the former the sheriff is the vendor, in the latter the court. (Citing cases.)" (p. 711.)

The sheriff in executing a deed to complete a judicial sale acts as a ministerial agent of the court and such a deed is construed with the judicial proceedings of which it forms a part. It conveys no greater title than is authorized by the judicial proceedings, although absolute in form.

In 50 C. J. S., Judicial Sales § 35 (e) it is stated:

"*Property and title conveyed.* The deed is to be construed with the judicial proceedings of which it forms a part. It conveys no greater title than the order of sale on which it is based, although absolute in form, and is void in so far as it includes land the decree did not authorize to be sold, the grantee receiving nothing more than color of title thereto. . . ."

In 30A Am. Jur., Judicial Sales § 178 we find this statement:

"The purchaser at a judicial sale merely receives what is generally regarded as a quitclaim title. Such a sale operates as a transfer of an existing title, and not as an original grant, and it may be stated as a broad rule that a purchaser at a judicial sale takes by virtue of his purchase all the right, title, and

interest of the parties to the proceedings in and to the property conveyed to him, and no more, except that the sale may operate under some circumstances to cut off outstanding equities."

The defendants contend that the court had no authority to limit the estate sold by its decree of confirmation since the judgment of foreclosure was not expressly limited to a life estate.

Our court in *Carter v. Hyatt,* 76 Kan. 304, 91 Pac. 61, said:

"The weight of authority seems to be that in the absence of fraud or circumstances that might affect substantial rights the court may cure by confirmation any infirmity in the proceedings which it could correct by immediately ordering a new sale. . . ."

. . . . . . . . . . . .

"It seems well established that whether a sale shall be confirmed or set aside is largely a matter of judicial discretion; that the determination thereof is a judicial decision, final unless corrected by appeal or unless wholly void; that the fact upon which the alleged infirmity is based was determined by the court in confirming the sale, and even if the fact were erroneously determined the final order of confirmation is not therefore void." (p. 310.)

In *National Reserve Life Ins. Co. v. Kemp,* 184 Kan. 648, 339 P. 2d 368, this court held that an erroneous provision in the journal entry of foreclosure relating to the sale of the premises might be cured if it relates to a fact necessarily involved in the subsequent adjudication in the confirmation of sale. (See also *Ehrsam v. Smith,* 61 Kan. 699, 60 Pac. 740.)

The decree or order of confirmation is a final and conclusive adjudication to the same extent as any other adjudication of a court of competent jurisdiction and is conclusive on all matters properly involved in the scope of the proceeding. In a proper case the decree of confirmation may be resorted to for the purpose of identifying the property conveyed. (50 C. J. S., Judicial Sales § 29; 30A Am. Jur., Judicial Sales § 163.)

There can be no doubt that J. W. Walmsley, who is defendants' predecessor in title, actively sought and obtained an adjudication on confirmation of the sale. The decree of confirmation limited the plaintiff's period of redemption to six months and directed the sheriff to execute a deed conveying an estate for the period of the life of Earl E. Nicholas. The sheriff as an agent of the court could convey no greater interest to this land than was authorized by the court.

The defendants contend that since plaintiff held a remainder interest in this property at the time she purchased the life estate the two estates merged and the life estate was immediately annihi-

lated. If this occurred, as is claimed, it would follow that the mortgage given by plaintiff to J. W. Walmsley covered whatever interest in the property plaintiff owned.

The common law theory of destructibility of contingent remainders has been changed in this state. (*Williams v. Bricker,* 83 Kan. 53, 58, 109 Pac. 998; *Miller v. Miller,* 91 Kan. 1, 136 Pac. 953; Simes and Smith, Law of Future Interests, 2nd Ed. §§ 197, 207, 209.) With this change the doctrine of merger has become largely a matter of theory governed by equitable considerations. It ought not to be employed to defeat the intent of a testator and to extinguish the rights of third persons. Two estates are considered as remaining separate whenever that view is to the advantage of their holder. (*Bullock v. Wiltberger,* 92 Kan. 900, 142 Pac. 950.) The doctrine of merger has its foundation in the convenience of the parties and should be determined from their intention. (*Loan Association v. Insurance Co.,* 74 Kan. 272, 86 Pac. 142; *Williams v. Bricker,* supra; *Miller v. Miller,* supra.)

However, aside from the intention of the parties and transcending any question of merger this court is of the opinion that J. W. Walmsley and his successors in title are estopped from asserting their present claim of title.

A party is not permitted to invoke the jurisdiction and power of a court for the purpose of securing important rights from an adversary through its judgment, and then, after obtaining the benefits sought, to repudiate or question the validity of that adjudication on the ground the court was without jurisdiction. (*Cole v. Cole,* 171 Kan. 220, 240 P. 2d 141; *Burnison v. Fry,* 199 Kan. 277, 428 P. 2d 809.)

This court has held a judgment creditor who filed a motion to confirm a sale is estopped from later claiming the judgment debt is unsatisfied. (*Fraser v. Seeley,* 71 Kan. 169, 79 Pac. 1081.) A purchaser of land at a foreclosure sale may be estopped to question the legality of a redemption. (*Bankers Mortgage Co. v. Dole,* 130 Kan. 367, 286 Pac. 258.)

In *Lillard v. Johnson County,* 102 Kan. 822, 172 Pac. 518, it was held:

"The doctrine of estoppel requires of a party consistency of conduct when inconsistency would work substantial injury to the other party." (Syl. 1.)

The doctrine of estoppel operates on the parties to the transaction or their privies. An heir of a party and a grantee by quitclaim deed

are considered privy in title with a predecessor since they have a mutual or successive relationship to the same right of property. (31 C. J. S., Estoppel §§ 52, 53; 28 Am. Jur. 2d, Estoppel §§ 117, 120; *Challis v. City of Atchison,* 45 Kan. 22, 25 Pac. 228; *Fitzgerald v. Fitzgerald,* 97 Kan. 408, 411, 155 Pac. 791.)

The mother who received her interest by will and the defendants who received it by quitclaim deed stand in the shoes of J. W. Walmsley. They take the property subject to any equities and limitations apparent in the foreclosure proceedings. J. W. Walmsley would be precluded and estopped from questioning the validity of the decree of confirmation which he actively sought and obtained from the court for the purpose of securing important rights from the plaintiff. Plaintiff's period of redemption, as a result thereof, was reduced by twelve months and J. W. Walmsley obtained possession of the premises that much earlier to the prejudice of plaintiff. The defendants, privy in title to Walmsley, are estopped to question the validity of this decree of confirmation which limited the interest sold to an estate for the life of Earl E. Nicholas.

Defendants make an additional claim to the title based upon possession of the property under color of title. The trial court specifically found and concluded they did not acquire the fee title by adverse possession.

This action was filed in June 1964. Our cases under G. S. 1949, 60-304 requiring the element of hostility to establish adverse possession are applicable. (See Gard, Kansas Code of Civil Procedure, § 60-503, p. 521.) The elements necessary to prove adverse possession are set forth in *Finn v. Alexander,* 102 Kan. 607, 171 Pac. 602. At p. 609 of the opinion it is said:

"A possession, however open and long continued it may be, will not operate as a disseizin and commencement of a new title unless it imports a denial of the owner's title and an appropriation of the land by the occupant to his own use. . . ."

The burden of proof was on the defendants to establish all elements of adverse possession to the satisfaction of the trial court. The possession and payment of taxes by life tenants are acts compatible with the rights and duties of life tenants and such acts will not support a claim of adverse possession against a remainderman unless there is something more to give the remainderman notice of their claim to the fee. (*Menger v. Carruthers,* 57 Kan. 425, 46 Pac. 712; *Withroder v. Wiederoder,* 156 Kan. 570, 134 P. 2d 381; *Cessna v.*

*Carroll,* 178 Kan. 650, 290 P. 2d 803, 58 A. L. R. 2d 291.) The finding of the trial court is conclusive under the facts set forth in this record. The defendants did not acquire title by adverse possession against their remainderman.

The judgment in favor of plaintiff is affirmed.