746 P.2d 645

STATE of New Mexico, ex rel. CON-
CRETE SALES & EQUIPMENT RENT-
AL COMPANY, INC., Plaintiff–Appel-
lee and Cross–Appellant,

v.

KENT NOWLIN CONSTRUCTION, INC.
and Transamerica Insurance Co., De-
fendants–Appellants and Cross–Appel-
lees.

No. 16223.

Supreme Court of New Mexico.

Dec. 2, 1987.

Downes, Comeau & Guzowski, Stephen P. Comeau, Kenneth C. Downes, Albuquerque, for defendants-appellants and cross-appellees.

Charles W. Rawson, Albuquerque, for plaintiff-appellee and cross-appellant.

## OPINION

SOSA, Senior Justice.

Concrete Sales & Equipment Rental Company (C & E) sued Kent Nowlin Construction, Inc. and Transamerica Insurance Company, the surety, (Nowlin) for failure to pay money due under an agreement in which C & E supplied Nowlin with aggregate materials and chips. Nowlin counterclaimed, alleging C & E had breached its agreement by supplying materials which did not meet project specifications and by failing to provide sufficient materials in a timely fashion. The trial court, sitting without a jury, awarded C & E damages totaling $54,117.18 and awarded Nowlin consequential damages totaling $21,000. Nowlin appeals, contending it was entitled to the remedy of "cover" under the Uniform Commercial Code (UCC) and also entitled to damages for costs incurred in reprocessing fine aggregate materials. C & E cross appeals, contending that the trial court erred in awarding Nowlin consequential damages. We affirm in part and reverse in part.

## FACTS

In 1981, the New Mexico State Highway Department awarded Nowlin, a general contractor, the Fort Wingate project, which required the laying of bituminous pavement asphalt concrete on road surfaces. Because this was a state construction project, Nowlin executed a bond under NMSA 1978, Sections 13–4–18 to –20 (Repl. Pamp.1985). The surety was Transamerica Insurance Company.

On June 10, 1981, C & E, a ready-mix company and crushing operation, entered into a purchase order agreement with Nowlin to supply a total of 66,000 tons of coarse, intermediate, and fine aggregate materials for the Wingate project. Walter Meech, owner of C & E, calculated that about 20,000 tons of this material would have to be intermediate aggregate. The contract provided all materials furnished had to meet "project specifications and requirements."

The undisputed facts reveal Nowlin had problems with C & E's production and supply of materials. For example, even though 20,000 tons of intermediate aggregate was needed for the job, C & E delivered only 2,099 tons. The last delivery was made in May 1982. Because C & E failed to timely supply an adequate amount of intermediate aggregate, Nowlin, on April 21, 1982, contracted with Gallup Sand & Gravel Company (Gallup) for substitute material. Nowlin notified Walter Jackson, Highway Department Project Supervisor, that it was contracting with Gallup. No letter was sent to C & E. Meech testified he was unaware Nowlin had purchased materials from Gallup until after the lawsuit commenced.

Nowlin also had difficulties with C & E's supply of fine aggregate. In spring or early summer of 1982, George McClendon, Nowlin's general superintendent, met with Meech to discuss problems with the fine aggregate. C & E's fine material had "dirty fines," an excess amount of minus 200 material. At this meeting, Nowlin agreed to reprocess the fine aggregate through its drum plant because C & E's materials did not meet the Highway Department's specifications. The parties did not discuss who would be liable for the cost of reprocessing the material. Meech testified Nowlin had never complained about the quantity or quality of materials being produced. Frank Fegan, Nowlin's employee hired to handle the Wingate project, testified he never discussed with C & E any costs of reprocessing the fines, or costs associated with the additional purchase of intermediate aggregate. According to Fegan, Nowlin did not want to "agitate" C & E and thus be cut off permanently before it could complete the job.

In October 1982, Nowlin paid C & E $40,000 to receive the final shipment of materials. Nowlin then owed C & E $54,-

116.18.[1] In November 1982, the Wingate project was completed. On November 3, 1982, Nowlin wrote C & E a letter, maintaining C & E had failed to perform according to the terms and conditions of the agreement. Nowlin alleged damages totaling $84,639 for reprocessing and replacing aggregate material and delayed costs in completing the project.

The issues on appeal are: (1) whether Nowlin could "cover" under the UCC without notifying C & E; (2) whether Nowlin was entitled to damages for reprocessing the fine aggregate; and (3) whether Nowlin was entitled to consequential damages.

## APPLICABILITY OF THE UCC

In the instant case, the contract provided for the sale of goods and for the service and manufacture of those goods (i.e., crushing materials). When the primary purpose of a contract is sale of goods as opposed to the rendition of services, it is considered a contract of sale. *Mennonite Deaconess Home & Hosp. v. Gates Eng'g Co.*, 219 Neb. 303, 363 N.W.2d 155 (1985). Therefore, the purchase order between C & E and Nowlin qualifies as a contract for the sale of goods under NMSA 1978, Sections 55–1–201(11) and 55–2–105(1) and is governed by the provisions of the UCC, NMSA 1978, Sections 55–1–101 to 55–9–507.

## BUYER'S REMEDIES

A. Section 55–2–712 "cover"

Nowlin challenges the trial court's finding of fact No. 13. Under findings Nos. 9, 10, and 11, the trial court stated that the parties' agreement required C & E to furnish 20,000 tons of intermediate aggregate; that C & E had only supplied 2,099 tons of this material; and that Nowlin obtained substitute intermediate aggregate because C & E had failed to provide the necessary material under the contract. The trial court's finding No. 13 states Nowlin never notified C & E that the intermediate aggregate was either insufficient or unsatisfactory, and therefore, the

trial court concluded Nowlin had no right to the remedy of cover. Although Nowlin challenges the court's finding that it never notified C & E of its breach, Nowlin primarily contends Section 55–2–711 does not require notice to the seller before a buyer can exercise the remedy of cover. We agree.

Section 55–2–711(1)(a) provides:

Where the seller fails to make delivery or repudiates or the buyer rightfully rejects or justifiably revokes acceptance, then with respect to any goods involved and with respect to the whole if the breach goes to the whole contract (Section 2–612 [55–2–612 NMSA 1978]), the buyer may cancel and whether or not he has done so may in addition to recovering so much of the price as has been paid: (a) 'cover' and have damages under the next section [55–2–712 NMSA 1978] * * * *

In the instant case, the parties' purchase agreement was an "installment contract" requiring the delivery of goods in separate lots to be separately accepted. § 55–2–612(1). In spring of 1982, C & E failed to timely deliver sufficient intermediate aggregate and thus did not fulfill the purchase order. Subsequently, Nowlin contracted with Gallup for the supply of intermediate aggregate. Nowlin accepted C & E's last shipment of intermediate aggregate in May 1982.

C & E, relying on Section 55–2–612(3), argues that Nowlin was not entitled to the remedy of "cover" because the contract was reinstated when Nowlin, without notifying C & E of any cancellation, accepted a nonconforming installment. We disagree. First, Nowlin accepted a partial delivery of conforming goods, not a nonconforming installment. There was no evidence that the intermediate aggregate accepted in May 1982 was nonconforming. Second, the statute is clear; it does not require a buyer to cancel a contract to effect the remedy of cover. When the seller fails to make deliv-

---

**1.** C & E's ledger sheet shows Nowlin owing $54,116.18, not $54,117.18 as the trial court concluded.

ery, then with respect to any goods involved, the buyer may cancel and whether or not he does so may "cover." § 55-2-711(1)(a).

Moreover, we conclude notice is not a condition precedent to the remedy of "cover." The reason is quite apparent. Under Section 55-2-711, a buyer has not accepted a tender. He either rejects or revokes acceptance,[2] or the seller repudiates by failing to make delivery. Not until the buyer accepts a tender must he, within a reasonable time after he discovers or should have discovered any breach, notify the seller of a breach or be barred from any remedy. § 55-2-607(3)(a).

Here Nowlin did not accept a complete tender, but only a partial delivery. A buyer's mere acceptance of partial goods does not waive or otherwise affect his right to damages for the seller's failure to deliver the remainder under the contract of sale. *Sundt v. Tobin Quarries, Inc.*, 50 N.M. 254, 175 P.2d 684 (1946). When a buyer has received insufficient performance, he should not be barred from recovering damages because of the partial performance, unless he agrees to accept the goods as full satisfaction of all his rights. *Id.* at 261, 175 P.2d at 688. Although Nowlin accepted the 2,099 tons of intermediate aggregate from C & E, there is no evidence of accord and satisfaction. Therefore, Nowlin was entitled to recover damages for C & E's failure to deliver as much materials as agreed upon. Nowlin, of course, had the option to either seek "cover" under Section 55-2-712(1) and then recover from C & E as damages the difference between the cost of cover and the contract price. § 55-2-712(2). Or, alternatively, Nowlin could recover damages for nondelivery under Section 55-2-713(1). We conclude that Nowlin properly exercised its remedy of "cover" under Section 55-2-712(1).

## B. Section 55-2-714 "Damages"

 Next, Nowlin challenges the trial court's finding No. 14. The trial court

found that even though Nowlin had difficulties with the fine aggregate, it was not entitled to damages because C & E was never notified that the materials were inadequate, or that it would be assessed costs for any problems with the materials. A trial court's finding will not be disturbed on appeal if it is supported by substantial evidence. *Wilson v. Employment Sec. Comm'n*, 74 N.M. 3, 389 P.2d 855 (1963). A trial court's finding, however, which has been challenged and is not supported by substantial evidence cannot be sustained on appeal. *Henderson v. Lekvold*, 99 N.M. 269, 271, 657 P.2d 125, 127 (1983). We hold that this finding is not supported by substantial evidence.

The facts clearly reveal Nowlin accepted the fine aggregate even though it did not meet the specifications as required under the contract. Nowlin even cured the defects in the fine aggregate to meet specifications as required under the contract. "A buyer of goods who, after having a reasonable opportunity to inspect them and with full knowledge of any defect in them, makes further payments, performs acts of dominion, or other acts inconsistent with any intention to rescind, may be deemed to have accepted the goods or ratified the sale." *O'Shea v. Hatch*, 97 N.M. 409, 413, 640 P.2d 515, 519 (Ct.App. 1982) (citations omitted).

When a tender has been accepted, the buyer must, within a reasonable time after he discovers or should have discovered any breach, notify the seller or be barred from any remedy. § 55-2-607(3)(a). "[A] person 'notifies' or 'gives' a notice or notification to another by taking such steps as may be reasonably required to inform the other in ordinary course whether or not such other actually comes to know of it." § 55-1-201(26). A person receives notice when it comes to his attention. § 55-1-201(26)(a). The official comment No. 4 reads in part:

The content of the notification need merely be sufficient to let the seller

---

**2.** The buyer, of course, will have to notify the seller of his rejection or revocation for it to be

effective. §§ 55-2-602(1) and 55-2-608(2).

know that the transaction is still troublesome and must be watched. There is no reason to require that the notification which saves the buyer's rights under this section must include a clear statement of all the objections that will be relied on by the buyer, as under the section covering statements of defects upon rejection (Section 2–605). Nor is there reason for requiring the notification to be a claim for damages or of any threatened litigation or other resort to a remedy. The notification which saves the buyer's rights under this article need only be such as informs the seller that the transaction is claimed to involve a breach, and thus opens the way for normal settlement through negotiation.

The recommended interpretation is that the buyer notify the seller of a breach. There is no requirement that the buyer also notify the seller of an intent to claim damages for such breach. The evidence shows Nowlin notified C & E of its breach. Meech testified C & E could not produce fine aggregate which met the Highway Department's specifications under the purchase order. McClendon's uncontroverted testimony also shows he met with C & E to discuss Nowlin's problems with the fine aggregate. At this meeting, McClendon informed C & E that it was in breach of the agreement with respect to the fine aggregate materials. C & E was not notified it would be liable for the cost of reprocessing the materials. But comment No. 4 states: "Nor is there reason for requiring the notification to be a claim for damages." A claim for damages was not made until November 3, 1982 when Fegan sent C & E written notification that it was in breach of the contract and that Nowlin was entitled to damages.

For a buyer to recover for breach of warranty, he must prove the existence of a defect caused by the seller, that the buyer notified the seller and sought repairs, and that the seller failed or refused to make repairs. *Deaton, Inc. v. Aeroglide Corp.*, 99 N.M. 253, 256, 657 P.2d 109, 112 (1982). The notice requirement in a breach of warranty action under the UCC serves three purposes: (1) to give the seller an opportu-

nity to cure a defect; (2) to give the seller an opportunity to prepare for negotiation and litigation; and (3) to safeguard the seller against stale claims. *Palmer v. A.H. Robins Co.*, 684 P.2d 187, 206 (Colo.1984). *See also O'Shea*, 97 N.M. at 415, 640 P.2d at 521 (purpose of statutory requirement of notice is to enable seller to minimize damages by curing defect and giving seller immunity against stale claims).

Nowlin has proven all the factors necessary to recover for breach of warranty. It is undisputed that C & E supplied defective fine aggregate. As discussed above, C & E was notified of its breach and was given the opportunity to cure the defect. In fact, C & E made several attempts to blow out the fines in order to conform the material to adequate specifications, but C & E was unsuccessful. Knowing Nowlin had to reprocess the fine aggregate by running the materials through its drum plant, C & E was informed of continuous problems with the fines. Because Nowlin notified C & E of its breach, it is entitled to damages for reprocessing the fine aggregate.

C & E concedes, in its brief, that Nowlin is entitled to a remedy as provided by Section 55–2–714. For breach of warranty the measure of damages is "the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, *unless special circumstances show proximate damages of a different amount.*" § 55–2–714(2) (emphasis added). Nowlin introduced uncontroverted evidence that its costs in reprocessing the fine aggregate totaled $34,639. This amount may or may not be an amount calculated by the breach of warranty formula, but the circumstances under this case show that the damages were $34,639. We hold, therefore, that Nowlin is entitled to damages for that amount.

## CROSS APPEAL

### A. Consequential Damages

■ C & E contends the trial court erred in awarding Nowlin consequential damages because C & E was not notified of its

breach. For the reasons set forth above, we disagree.

The Highway Department assessed Nowlin $21,000 in liquidated damages for its delay in completing the Wingate project. The trial court found that the liquidated damage provision was incorporated in the purchase order agreement and that the consequential damages resulted from C & E's failure to timely furnish materials. This is a proper case for an award of consequential damages. *See* §§ 55–2–714(3) and 55–2–715(2)(a).

We reverse the trial court on Nowlin's entitlement to the remedy of cover and to damages for reprocessing the fine aggregate materials. We set damages for Nowlin's cost in reprocessing the fine aggregate at $34,639, and affirm the trial court's consequential damages award of $21,000. The case is remanded for the trial court to determine any damages Nowlin may have incurred seeking cover. The court then shall set an appropriate damage award to Nowlin which shall be offset by $54,116.18, the amount Nowlin owes for all materials accepted and used in the Wingate project.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.