790 P.2d 502

**Margarito TRUJILLO and Swope Farm and Livestock Co.,
Plaintiffs–Appellants,**

v.

**CS CATTLE CO. and Eagle Nest Reservoir Corporation,
Defendants–Appellees,**

v.

**ANGEL FIRE CORPORATION,
Defendant–Intervenor–Appellee.**

**No. 18129.**

Supreme Court of New Mexico.

April 12, 1990.

Rehearing Denied May 11, 1990.

Steven E. Schmidt, John W. Danfelser, Albuquerque, for plaintiffs-appellants.

Charles T. DuMars, Albuquerque, Kastler & Kamm, Paul A. Kastler, John William Clever, Raton, for defendants-appellees CS Cattle Co. and Eagle Nest Reservoir Corp.

Kanter & Everage, Elvin Kanter, Albuquerque, for defendant-intervenor-appellee Angel Fire Corp.

## OPINION

BACA, Justice.

Appellants, Margarito Trujillo and Swope Farm and Livestock Company, brought suit against CS Cattle Company (CS), its wholly owned subsidiary Eagle Nest Reservoir Corporation, and intervenor Angel Fire Corporation seeking *inter alia* a declaratory judgment, injunctive relief, and damages for breach of contract regarding appurtenant water rights. Appellants sought to have CS's regulations regarding its reservoir declared invalid as violative of certain covenants in Trujillo's and Swopes' deed granting water rights and sought injunctive relief preventing the enforcement of the regulations. They also sought damages for breach of contract and tort. The district court, following a bench trial on the merits, determined that the regulations promulgated by CS were reasonable and that the covenant by which Trujillo claimed water was ambiguous on the issue before the court. It interpreted the covenant in favor of appellees, and granted the judgment in their favor.

We find that the contract was not ambiguous and reverse the judgment.

FACTS

CS was granted a permit to construct a reservoir with a priority date of 1907. The water right permit was confirmed by an adjudication decree in 1929. Appellants received appurtenant water rights through two warranty deeds granted by CS Cattle Company conveying certain acreage to their predecessors in interest in 1933 and 1951. The 1933 deed conveying 462.2 acres of land stated that 135 of the acres have "water right[s] under Permit Number seventy-one (71)." The instrument continued that the conveyance of land was made:

Together with the right, as an appurtenance to said lands, to demand and receive of the waters of the Cimarron River and its tributaries, impounded and to be impounded by what is known as the Eagles [sic] Nest Dam and Reservoir owned by [the Charles Springer Cattle Company (now CS)], an amount of water delivered to said land sufficient for beneficial use in the proper irrigation thereof, for the growing of crops thereon without waste of said water, limited to the maximum amount of one and one-half (1½) acre feet per acre per annum on not to exceed one hundred and thirty-five (135) acres of land actually irrigated during each year.

The 1951 deed contained the following agreement concerning the water rights:

1. It is understood and agreed that the water right appurtenant to said land above described is a right for the irrigation of 972 acres, said water right being a part of the water right represented by Permit No. 71. [The Charles Springer Cattle Company (now CS)] hereby agrees that, without cost to [appellants' predecessor] it will deliver all of the water appurtenant to the said 972 acres of irrigated land at the diversion dam now serving said land and located on the Cimarron River, and that no maintenance charges or other charges whatsoever shall be made to [appellants' predecessor] for the upkeep of the Eagle's [sic] Nest Dam and Reservoir from the said reservoir to the said diversion dam on the Cimarron River * * *

2. To guard against a shortage of irrigation water for the irrigated lands hereby conveyed, [the Charles Springer Company (now CS)] agrees that of the water stored in the Eagle's [sic] Nest Dam and Reservoir, *it will not sell or deliver water for any use whatsoever to any person or party not having a vested water right for the same at the date of this deed, at any time when the water stored in the said Eagle's [sic] Nest Dam and Reservoir is less than 20,000 acre feet, except with the written consent of all parties having vested water rights under said Permit No. 71, or their heirs or assigns.*

(Emphasis added.)

The agreement continued that the water rights vested under Permit No. 71 included those assigned to appellants through the 1933 deed. It had become apparent that at times the water supply would be less than required to meet all the rights to the water. CS agreed to grant those parties, including

appellants' predecessor in interest, that had contracted for water as of 1951, a priority date equal to that of the permit, 1907. These first tier users were granted the rights contained in the above deed. The first tier users had rights to approximately 10,040 acre feet of water per annum; parties with priorities antedating the permit also had rights to approximately 10,000 acre feet per annum.

Pursuant to the covenant, the first tier users met annually through 1981 to determine the appropriate pro rata allocation of water stored in the reservoir. In 1983, however, CS unilaterally promulgated regulations through which it sought to sell water when the reservoir contained less than 20,000 acre feet without the consent of the first tier users. CS further asserted the right to limit appellants' water rights to water received in the preceding year rather than water stored in the reservoir.

The amended regulations adopted by CS in 1988 state in pertinent part:

3. *Adoption to Contracts by Reference; Court Reference*

(a) All of the contracts and deeds for water issued by, and executed between, the CS and the reservoir water users shall be subject to these Regulations as though set forth in full detail in the contracts and deeds to the degree they apply in each contract or deed.

(b) The incorporation by reference of these Regulations shall also be true of all contracts and deeds for License 71 waters or water rights issued heretofore by the CS. All persons who have rights under License 71 shall be bound by these Regulations and all contracts, deeds and other documents evidencing or manifesting such person's rights under License 71 shall be deemed modified to conform to the provisions, terms and interpretations of these Regulations.

\*     \*     \*     \*     \*     \*

9. *New Contracts*

Under License 71, CS may contract from time to time and on terms it may determine, water from the storage pool for beneficial use, in a bulk quantity or as second tier rights, and may also so contract for storage privileges for municipal or domestic use in the reservoir.

\*     \*     \*     \*     \*     \*

12. *Standby Pool*

(a) CS has declared, by use and by contract, that there is a standby pool of 20,000 acre feet of water in the Reservoir, to be maintained, contracted, delivered out of storage, distributed or stored in the Reservoir. Such water has been, and will in the future be, beneficially used under New Mexico law for public recreation, game and fish, and other recognized beneficial uses.

(b) CS may, from time to time, sell, deliver and distribute, in bulk quantity contracts for beneficial use, any portion of the standby pool \* \* \*.

\*     \*     \*     \*     \*     \*

17. *Carryover Water or Annualized Carryover Storage Water*

\* \* \* The privilege of first tier water rights to the limited storage under the water storage year/use year and carryover provisions of these Regulations, is derived in part from the clause contained in certain contracts and deeds which proscribe a sale or delivery of water when the reservoir has less than 20,000 acre feet of water. The water storage year/use year and carryover storage privileges herein provided supplants such clause in its entirety, intent and meaning.

Appellants contest the regulations, which they claim abrogate the rights granted them through their deeds. They claim that appellees' contention that the deed is ambiguous regarding the 20,000 acre foot reservoir and thus allows appellee unilaterally to impose the regulations is meritless, and that, if the provisions in the deed create a nonbeneficial use of water, CS is not the proper party to assert that claim.

Appellants have presented the following issues for our consideration in support of its argument that the district court should be reversed: (1) the deeds unambiguously granted them certain rights, and those rights should be determined by this court as a matter of law; (2) because the language of the deeds is unambiguous, parol

evidence should not have been admitted to demonstrate an ambiguity; (3) the doctrine of merger precludes admission of the executory purchase contracts into evidence; (4) estoppel by deed bars CS from asserting rights contrary to its deeds; (5) the deeds, if ambiguous, should be interpreted against CS as drafter; (6) certain findings of fact are not supported by substantial evidence; and (7) enforcement of the agreements contained in the deeds does not result in waste.

CS has construed the issues somewhat differently, and contends: (1) the covenant properly was found to be ambiguous, and substantial evidence supports the trial court's construction; (2) appellants own a contract right to receive water from the reservoir, and do not own, as an appropriative right, any part of Permit 71; (3) appellants' contract for irrigation water does not entitle them to a 20,000 acre foot pool; and (4) the regulations in fact improve the operation of the reservoir and make more water available to appellants than there was previously.

We do not find it necessary to address all of the issues raised in order to resolve properly the case before us. Many of CS's contentions are premised in the ambiguity of the deed, a premise we find in error. Accordingly, we consider whether the deed is ambiguous, whether extrinsic evidence properly was admitted, whether estoppel by deed bars CS from asserting rights contrary to the deed, and whether the effect of the regulations is relevant to our decision.

As a threshold matter, CS claims that appellants have not met the requirements of SCRA 1986, 12–213(A)(3), pertaining to the format for an appellate brief-in-chief. It argues that appellants have not set forth a specific attack on the findings together with the substance of the evidence contended to be in error and thus is bound by those findings. We find, however, that appellants properly have set forth their argument. Appellants have based their claim in their deed, interpretation of which is a question of law. *See Peck v. Title USA Ins. Corp.*, 108 N.M. 30, 766 P.2d 290 (1988). This contention is stated adequately in appellants' briefs, with appropriate citation to the record and to the challenged findings. Because appellants rest on interpretation of the deed, the evidence supporting the findings that CS claims was not cited by appellants is irrelevant to our decision based on interpretation of the document. *See State ex rel. Garcia v. Martinez*, 80 N.M. 659, 459 P.2d 458 (1969).

I. *The Deed is not Ambiguous, and Parol Evidence is Inadmissible to Vary Its Clear Meaning.*

Initially, the parties argue whether appellants' right to water is appropriative or merely based in contract. CS vigorously maintains that it owns the permit, the dam, the reservoir, and the water, and that appellants have not gained a right to the water through an appropriation, which it maintains is the only way appellants could have gained an appropriative right.[1] Appellants contest this argument, indicating that an appropriative right may be gained through a transfer of land with water appurtenant.[2] We find, however, that resolution of this case does not require us to determine this issue. Even if appellants

---

1. CS relies on NMSA 1978, Sections 72–1–1 and 72–5–1 (Repl.Pamp.1985) for this proposition, as well as *State ex rel. Erickson v. McLean*, 62 N.M. 264, 308 P.2d 983 (1957); *Yeo v. Tweedy*, 34 N.M. 611, 286 P. 970 (1929); and *Hinderlider v. La Plata River & Cherry Creek Ditch Co.*, 304 U.S. 92, 58 S.Ct. 803, 82 L.Ed. 1202 (1938). Section 72–1–1 establishes that all waters flowing in New Mexico belong to the public and are subject to appropriation; Section 72–5–1 requires that an individual seeking the right to appropriate must file with the State Engineer and follow appropriate application procedures. *Erickson* and *Yeo* similarly state that the corpus of waters in New Mexico belongs to the state,

and water can be appropriated for beneficial use through the appropriation system.

2. Appellants cite us to NMSA 1978, Section 72–5–22 (Repl.Pamp.1985) ("[T]he transfer of title of land in any manner whatsoever shall carry with it all rights to the use of water appurtenant thereto for irrigation purposes, unless previously alienated in the manner provided by law."), and *First State Bank of Alamogordo v. McNew*, 33 N.M. 414, 269 P. 56 (1928), to support its position, and refers us to the express language of its deed transferring land together with appurtenant water.

have only an annualized contract right for the sale of water, CS is bound by its contract. Even a "mere contract right" cannot be blithely and unilaterally ignored.

Where the language of an agreement clearly and unambiguously expresses the intent of the parties, this court must give effect to the parties' agreed-upon intent. *See Padilla v. Sais,* 76 N.M. 247, 414 P.2d 223 (1966). The determination of ambiguity is a question of law. *Levenson v. Mobley,* 106 N.M. 399, 744 P.2d 174 (1987). A contract will be found ambiguous only if it is reasonably susceptible to different constructions. *Id.* Merely because the parties differ on the proper construction does not establish an ambiguity. *Vickers v. North Am. Land Devs., Inc.,* 94 N.M. 65, 607 P.2d 603 (1980). Furthermore, parol evidence is not admissible to alter or vary unambiguous language in a contract or deed or "for the purpose of rendering an otherwise clear contract provision ambiguous." *Clark v. Sideris,* 99 N.M. 209, 213, 656 P.2d 872, 876 (1982) (unless an ambiguity exists, court will not go beyond the document's four corners to ascertain intent).

Despite the multitudinous questions that CS contends the 1951 deed does not address or answer in its effort to demonstrate to us that the deed is ambiguous, we find that it is not ambiguous as to the right of appellants to have reserved in the reservoir 20,000 acre feet of water. The 1951 deed states:

> To guard against a shortage of irrigation water for the irrigated lands hereby conveyed, [the Charles Springer Cattle

Company (now CS)] agrees that of the water stored in the Eagle's [sic] Nest Dam and Reservoir, it will not sell or deliver water for any use whatsoever to any person or party not having a vested water right for the same at the date of this deed, at any time when the water stored in the said Eagle's [sic] Nest Dam and Reservoir is less than 20,000 acre feet * * *

We find that this language, which was agreed to by CS, unambiguously prevents CS from selling water to parties who do not have vested water rights when there is less than 20,000 acre feet of water in the reservoir, without the permission of the vested right holders.[3]

CS argues that the provision is ambiguous: for example, it does not address "whose water it is that is stored, whether *any* water *must* be stored, what happens to that 20,000 acre feet from year to year, and significantly, whether that includes water flowing into the reservoir—'inflow'." However, the express language of the provision clearly states that CS will not sell water when less than the requisite amount exists. It is irrelevant to whom the water belongs, whether water must be stored, what happens to the water, or whether "inflow" is included; CS simply cannot sell water when the amount is less than 20,000 acre feet.[4]

CS maintains that after extrinsic evidence is considered, the intent of the parties becomes clear: the agreement intended, in any one year, to give first tier users water before subsequent users.

---

3. A reading of the regulations promulgated by CS indicates that CS, too, at one time interpreted its agreement as we do today.

4. One fundamental error in CS's argument is its characterization of appellants' claim as interpreting the deed to require storage. The deed does not require any water to be stored, and it does not grant appellants ownership or an exclusive right to the water—it simply precludes CS from selling water to nonvested, nonfirst tier users when the water level falls below 20,000 acre feet.

   CS raises other questions it contends demonstrate an ambiguity. It argues that the clause does not answer whether appellants are allowed to take more than their annualized duty. The

answer to this is "no"; by the terms of their deed, appellants can take only their duty. Because the deed does not require storage, appellants are not "given" storage, but this does not limit their right to hold CS to the terms of the agreement. Similarly, CS raises a question regarding whose water it actually is. The water belongs to the State of New Mexico; individuals have a right to put the water to beneficial uses, and CS has the right to store it and sell it, limited by its contractual arrangements. CS contends that the clause does not address which party is responsible for evaporation. Again, the express terms of the deed preclude selling water when there is less than 20,000 acre feet; evaporation is not an issue.

■ However, because we find that the agreement is unambiguous, parol evidence admitted at trial, over appellants' objection, that served to vary or contradict the terms of the agreement was improperly admitted. *See, e.g., Brooks v. Tanner,* 101 N.M. 203, 680 P.2d 343 (1984); *Lanehart v. Rabb,* 63 N.M. 359, 320 P.2d 374 (1957) (parol evidence inadmissible to show grantor's intent that would vary terms of unambiguous deed), *overruled on other grounds, Ortega, Snead, Dixon & Hanna v. Gennitti,* 93 N.M. 135, 597 P.2d 745 (1979); *cf. Yucca Mining & Petroleum Co. v. Howard C. Phillips Oil Co.,* 69 N.M. 281, 285–86, 365 P.2d 925, 928 (1961) (although evidence of prior or contemporaneous parol agreements cannot be admitted to vary terms of written contract concerning interest in land, evidence of subsequent oral modification admissible). Thus, extrinsic evidence showing that the regulations actually created a more efficient use of the reservoir, that the agreement between CS and appellants constituted waste, and that the agreement meant something other than a literal construction would indicate, was all improperly before the court and should not have been considered. *See Boatwright v. Howard,* 102 N.M. 262, 694 P.2d 518 (1985) (intent of parties should be ascertained from the instrument itself); *Boylin v. United Western Minerals Co.,* 72 N.M. 242, 246, 382 P.2d 717, 720 (1963) ("The terms of the agreement as written being clear, the intent must be ascertained from the language used."); *Davies v. Boyd,* 73 N.M. 85, 87–88, 385 P.2d 950, 951 (1963) ("The purpose, meaning and intent of the parties to a contract is to be deduced from the language employed by them; and where such language is not ambiguous, it is conclusive.")

Accordingly, we find that because the language of the deed unambiguously conveys the intent of the parties, extrinsic evidence cannot be relied upon to vary the clear language used by the parties.

II. *Estoppel by Deed Bars CS from Asserting Rights Contrary to the Deed.*

■ CS contends, and the trial court found, that if the clause is interpreted to require that 20,000 acre feet must be stored, it violates our law because the water is not being put to beneficial use, citing New Mexico Const. art. XVI. CS does not contest, however, the validity of the deed under which it granted to appellants the rights at issue.

Appellants dispute CS's standing to argue that the water is not being put to beneficial use, contending that CS is barred by the doctrine of estoppel by deed from denying the agreement not to sell water when less than 20,000 acre feet exist in the reservoir. Appellants maintain that the deed created a right in them, protecting them from a shortage of water, and CS cannot dispute the plain language of the deed.

> Estoppel by deed is a bar which precludes a party to a deed and his privies from asserting as against the other and his privies any right or title in derogation of the deed, or from denying the truth of any material fact asserted in it. In order that a deed may give rise to an estoppel, it must contain representations or covenants. * * * [A]n estoppel by deed may be invoked only in a suit on the deed or concerning a right arising out of the deed.... The doctrine of estoppel by deed is applied in order to avoid circuity of action, and to compel the parties to fulfill their contracts.

31 C.J.S. *Estoppel,* § 10 (1964) (footnotes omitted); *see also* 28 Am.Jur.2d *Estoppel and Waiver* § 4 (1966); *Norman v. State,* 182 Mont. 439, 597 P.2d 715 (1979); *Rocky Cliff Coal Mining Co. v. Kitchen,* 29 N.M. 395, 222 P. 658 (1924). Estoppel by deed binds the parties to a deed, as well as their heirs and assigns, to its representations. *Aguilera v. Corkill,* 201 Kan. 33, 439 P.2d 93 (1968).

CS conveyed by deed certain acreage to appellants' predecessor in interest, including appurtenant water rights, and "to guard against a shortage of irrigation water," CS agreed not to sell water when the water level fell below 20,000 acre feet. Having granted this right, CS is estopped from denying its validity through its regulations.

CS asserts, as an affirmative defense, that such a determination grants appellants the right to a standby pool of water that is not put to beneficial use and is therefore contrary to basic water law tenets. Assuming, *arguendo*, that the agreement does grant such a right in its effect, we find that CS is not the proper party to challenge appellants' right. Estoppel by deed operates to bar it from denying the representations in its deed. Junior users who in fact are prejudiced by any lack of beneficial use of the water, or the State Engineer, would not be estopped from challenging the agreement on the grounds of waste, but CS is, and it cannot be heard to complain about being required to perform pursuant to its covenant. *See Surface Creek Ditch & Reservoir Co. v. Grand Mesa Resort Co.*, 114 Colo. 543, 557, 168 P.2d 906, 913 (1946) (en banc) ("As between the litigating parties defendant is in no position to insist that plaintiff's use of the waters impounded in [the reservoir at issue] is not a beneficial one, for by the provisions of its contract it recognized it as such. It is now estopped to make this contention, and it, therefore, is not necessary to, and we do not, determine whether the use made of impounded waters * * * is such a beneficial use as would entitle [plaintiff] to appropriate waters therefor.")

As a final matter, we feel it necessary to address with CS's contention that the regulations are necessary for the efficient functioning of the reservoir and, in fact, improve its operation, making more water available to appellants and other users. CS argues that the regulations are extremely generous to users, such as appellants; appellants do not pay operational costs, they bear no carriage costs, and the system implemented by the regulations assures prudent planning from year to year for users. At trial, CS presented considerable expert testimony regarding the efficiency of the regulations and the increased availability of water resulting from their use, all to the effect that appellants suffered no injury from the regulations' implementation. As CS argues, because of the self-evident improvements for the users, appellants' "inability to understand that they are better off under the Regulations * * * is baffling * * * *. The irony of this case is that the very Regulations under attack by [appellants] have made them better off than they have been historically."

Initially, it should be understood that nothing in our opinion precludes CS from implementing regulations or improving the ability of the reservoir to function efficiently. CS is only prevented from implementing regulations that interfere with the rights it has established to users by prior agreement. Second, we do not find that appellants' desire to enforce their contractual rights is baffling; CS obviously guaranteed appellants a valuable right to protect against water shortage—a right not vitiated by the improvements that CS contends have been made. Finally, we find much of CS's argument irrelevant. Whether the system functions more efficiently under the regulations does not justify CS's repudiation of contractual obligations after appellants have performed their part of the agreement, simply because it has determined at this late date that the agreement is no longer propitious.

Accordingly, we hold that the agreement between CS and appellants' predecessor in interest unambiguously precludes CS from selling water to nonvested users when the water level falls below 20,000 acre feet. Regulations promulgated by CS that seek to unilaterally supplant or supersede the terms of the agreement are thus void and without effect. We REVERSE and VACATE the judgment of the district court, and REMAND to the district court to enter judgment in favor of appellants declaring invalid the regulations promulgated by CS and to consider appellants' remaining claims.

IT IS SO ORDERED.

SOSA, C.J., and RANSOM, J., concur.