845 P.2d 800

Susan **KIRKPATRICK**, d/b/a Kirkpatrick & Associates, Plaintiff–Appellant,

v.

**INTROSPECT HEALTHCARE CORPORATION, a New Mexico corporation, d/b/a Introspect Healthcare of New Mexico and Daniel Lopez, Defendants–Appellees.**

No. 19944.

Supreme Court of New Mexico.

Dec. 29, 1992.

---

Sager, Curran, Sturges & Tepper, C. Kristine Osnes, Stanley C. Sager, The Payne Law Firm, P.C., H. Vern Payne, Albuquerque, for plaintiff-appellant.

Richard N. Feferman, Albuquerque, for defendants-appellees.

## OPINION

BACA, Justice.

Plaintiff-appellant, Susan Kirkpatrick ("Kirkpatrick") brought suit against Introspect Healthcare Corporation and Daniel Lopez (together referred to as "Introspect"), alleging breach of contract and several related counts. Pursuant to Introspect's motion under SCRA 1986, 1–012(B)(6) (Repl.Pamp.1992), the trial court dismissed Kirkpatrick's complaint for failure to state a claim upon which relief can be granted. Kirkpatrick appeals the dismissal of her complaint. Her appeal raises the following issues: (1) Whether the trial court erred in dismissing Kirkpatrick's breach of contract claim; (2) whether the contract is ambiguous; (3) whether the trial court erred in dismissing the additional counts raised in Kirkpatrick's complaint; and (4) whether the trial court misapplied SCRA 1986, 1–054(C)(1) (Repl.Pamp.1992). We note juris-diction under SCRA 1986, 12–102(A)(1) (Repl.Pamp.1992) and reverse.

### I

Kirkpatrick, an interior designer, entered into a written contract with Introspect Healthcare Corporation in September of 1989. The contract required Kirkpatrick to create the interior design for the Desert Hills adolescent mental healthcare facility and to sell furnishings to Introspect to complete the designs. Kirkpatrick was to perform 23 itemized services during the course of the Desert Hills project, all related to the creation and development of the facility's interior design. The terms of the contract provided that the fee for Kirkpatrick's interior design services would be generated through markups on furnishings that Kirkpatrick purchased and resold to Introspect for use in Desert Hills. The contract required Introspect to pay Kirkpatrick $12,000 during the beginning stages of the project. After Introspect paid an initial $6,000, the contract required Kirkpatrick to design the interior and specify all the furnishings for Desert Hills. A second payment of $6,000 was due after Introspect approved of Kirkpatrick's "interior specifications, selections and drawings." Both $6,000 payments were to be deducted from Kirkpatrick's design fee generated from the sale of furnishings.

Introspect paid Kirkpatrick $12,000 at the outset of the Desert Hills project. Kirkpatrick proceeded to create the interior designs and to specify furnishings for Desert Hills. In December of 1989, Introspect sent a letter to Kirkpatrick, notifying her that it was over budget on the Desert Hills project and requesting that certain revisions and modifications be made to Kirkpatrick's designs and specifications.

In January of 1990, Introspect advised Kirkpatrick that bids to provide the furnishings for Desert Hills were being obtained from other sources. Unable to realize a portion of her design fee from the sale of furnishings, Kirkpatrick brought suit for damages, alleging breach of contract, negligent misrepresentation, fraudulent representation, loss of reputation,

mental anguish and distress, and violations of the New Mexico Unfair Trade Practices Act. Alternatively, Kirkpatrick sought recovery for the reasonable value of her services under a quantum meruit theory.

Introspect filed a motion to dismiss all counts of the complaint under Rule 12(B)(6), arguing that Kirkpatrick failed to state a claim on which relief could be granted. The trial court made a preliminary decision to grant Introspect's motion to dismiss. Kirkpatrick subsequently moved the trial court to enter final judgment pursuant to SCRA 1986, 1–054(C)(1), for the purpose of facilitating immediate appeal, and alternatively sought permission to amend her complaint. On May 17, 1991, the trial court issued an order and judgment, dismissing Kirkpatrick's complaint, entering final judgment pursuant to SCRA 1986, 1–054(C)(1), and denying Kirkpatrick permission to amend. Kirkpatrick appeals, contending that the trial court erred by dismissing her complaint.

## II

■ We first address whether the trial court erred in dismissing Kirkpatrick's breach of contract claim for failure to state a claim upon which relief can be granted. A motion to dismiss made pursuant to Rule 12(B)(6) tests the legal sufficiency of plaintiff's complaint. *Garcia v. Rodey, Dickason, Sloan, Akin & Robb, P.A.*, 106 N.M. 757, 760, 750 P.2d 118, 121 (1988). A motion to dismiss should be granted only when it appears that the plaintiff is not entitled to recover under any facts provable under the complaint. *Castillo v. County of Santa Fe*, 107 N.M. 204, 206, 755 P.2d 48, 50 (1988). We limit our inquiry to the contents of Kirkpatrick's complaint and the attached contract and assume that the facts alleged in the complaint are true. *Id.* at 205, 755 P.2d at 49.

Introspect argues that the trial court properly granted its motion to dismiss. In essence, Introspect claims that the contract between the parties, requiring the purchase and sale of "furnishings," constituted a contract for the sale of goods, *see* NMSA 1978, Section 55–2–105 (defining "goods"),

and is therefore governed by Article 2 of New Mexico's Uniform Commercial Code (NMSA 1978, §§ 55–2–101 to –725 (Orig.Pamp. & Cum.Supp.1992)) ("the UCC"). The linchpin of Introspect's argument is that all facts alleged by Kirkpatrick, taken as true, fail to state an actionable claim for breach of contract because the contract between the parties fails to state a quantity term as required by the UCC's Statute of Frauds. *See* NMSA 1978, § 55–2–201(1). The trial court agreed and dismissed Kirkpatrick's claim for breach of contract.

In addressing Introspect's argument that Kirkpatrick's count for breach of contract fails because the contract lacked a quantity term, a threshold question is presented as to whether Article 2 of the UCC applies to the contract between the parties. Article 2 applies to contracts for the sale of goods and has no application to contracts for services. NMSA 1978, § 55–2–102.

■ In this case, Kirkpatrick and Introspect entered into a mixed contract, both for interior design services and the sale of goods. There are two generally recognized tests used to determine whether mixed contracts are subject to Article 2. *See* James J. White & Robert S. Summers, *Uniform Commercial Code* § 1–1, at 26 (3d ed. 1988). A minority of jurisdictions divide a mixed contract for goods and services into its component parts and apply Article 2 solely to the transaction for the sale of goods. *See, e.g., Foster v. Colorado Radio Corp.*, 381 F.2d 222, 226 (10th Cir.1967). New Mexico and a majority of jurisdictions apply the "primary purpose" test. *See, e.g., State ex rel. Concrete Sales & Equip. Rental Co. v. Kent Nowlin Constr., Inc.*, 106 N.M. 539, 541, 746 P.2d 645, 647 (1987). Under this test, Article 2 applies to mixed contracts only if the primary purpose of the contract is to sell goods rather than to provide services. *Id.*

A leading case associated with the primary purpose test is *Bonebrake v. Cox*, 499 F.2d 951 (8th Cir.1974). In *Bonebrake*, the parties contracted for the sale and installation of used bowling equipment. In holding the UCC applicable because the

"sale of goods" aspect of the contract predominated over the substantial labor and installation services involved, the Eighth Circuit Court of Appeals stated that:

> The test for inclusion or exclusion [from Article 2] is not whether [the contracts] are mixed, but, granting that they are mixed, whether their predominant factor, their thrust, their purpose, reasonably stated, is the rendition of service, with goods incidentally involved ... or is a transaction of sale, with labor incidentally involved....

*Id.* at 960.

The application of the primary purpose test articulated in *Bonebrake* to mixed contracts for design services and the sale of goods has never been addressed by this Court. Other jurisdictions, however, have addressed this issue. In *Care Display, Inc. v. Didde–Glaser, Inc.*, 225 Kan. 232, 589 P.2d 599 (1979), the Supreme Court of Kansas applied the *Bonebrake* test to a mixed contract for goods and design services. In *Care Display, Inc.*, the plaintiff entered into an oral contract with the defendant for the design and construction of a trade show exhibit. *Id.* at 602. The plaintiff sued the defendant when bids were solicited from other exhibit makers after the course of communication between the parties indicated the existence of an exclusive contract. *Id.* at 602–03. After losing a jury verdict for breach of oral contract, the defendant appealed and argued that any oral contract between the parties was barred by the UCC's Statute of Frauds. *Id.* at 602.

The Supreme Court of Kansas applied the "primary purpose" test to the contract between the parties and held Article 2 of the UCC inapplicable. *Id.* at 605–06. While the contract involved the sale of goods, the Court held that its primary purpose was the rendition of services through the use of the plaintiff's specialized knowledge and expertise to create a "unique setting in which to exhibit and promote [the defendant's] products...." *Id.* at 605. Accordingly, the sale of goods was merely incidental to the rendition of services. *Id.*

We find the rationale of *Care Display, Inc.* instructive and hold that Article 2 of the UCC does not apply to the contract between Kirkpatrick and Introspect. Examination of the contract as a whole makes it clear that the contract's primary purpose was to provide interior design services. The contract itemized 23 different services to be performed, including developing an appropriate ambience and community image for the facility, developing, selecting, and specifying interior finishes and layouts, developing the facility's color schemes, and suggesting changes to the architectural plans. By performing these and other enumerated services, Kirkpatrick was to use her experience and expertise to develop a distinctive interior design for the Desert Hills healthcare facility. Although the contract clearly contemplated that Kirkpatrick would purchase and resell goods to Introspect, in the form of furnishings, this was only one aspect of a predominantly service-oriented contract.[1] Because the primary purpose of the contract be-

1. Kirkpatrick argues in her brief-in-chief that the contract between the parties is solely for the performance of professional services. She relies on NMSA 1978, Section 61–24C–3(B), when arguing in her brief-in-chief that "the New Mexico legislature has recognized that interior designer contracts are contracts for services" and contends that the UCC never applies to interior design contracts such as the contract in this case. Such reliance on the professional and occupational licensing statutes for interior designers, NMSA 1978, §§ 61–24C–1 to –16 (Repl.Pamp.1990), is misplaced. These licensing statutes are intended to set standards and requirements for the practice of and entrance into the profession of interior design and do not represent a legislative proclamation that interi-

or design contracts are solely service contracts exempt from the UCC. A sale of goods does not lose its character as such merely because it is in the context of a professional services contract. Accordingly, we decline to hold that Article 2 of the UCC is never applicable to the sale of goods in the context of a mixed contract for goods and services. Instead, we determine whether Article 2 applies to a given mixed contract on a case-by-case basis, scrutinizing the contract itself to determine whether the primary purpose of the contract is for sales or services. *See, e.g., Air Heaters, Inc. v. Johnson Elec., Inc.*, 258 N.W.2d 649, 653 (N.D.1977). Article 2 applies to a mixed contract when the primary purpose of the contract is for the sale of goods.

tween the parties was for the provision of services, rather than for the sale of goods, Article 2 of the UCC does not apply to the contract in this case.[2] Consequently, Introspect's argument that the contract is unenforceable because it lacks a quantity term, in violation of the UCC's Statute of Frauds, is without merit. We find that Kirkpatrick's breach of contract claim was legally sufficient to survive Introspect's 12(B)(6) motion and hold that the trial court erred when it dismissed the claim for failure to state a claim upon which relief can be granted.

### III

We next address the issue of whether the contract is ambiguous. The parties disagree about whether the contract obligated Introspect to purchase furnishings from Kirkpatrick. Whether or not a contract is ambiguous is a question of law for the court. *Trujillo v. CS Cattle Co.*, 109 N.M. 705, 709, 790 P.2d 502, 506 (1990). When determining whether a contract is ambiguous, the court must consider the contract as a whole. *Levenson v. Mobley*, 106 N.M. 399, 401, 744 P.2d 174, 176 (1987). A contract is ambiguous only if it is reasonably susceptible to different constructions. *Trujillo*, 109 N.M. at 709, 790 P.2d at 506. An ambiguity is not established simply because the parties differ on the contract's proper construction. *Id.* When the language of the contract clearly and unambiguously expresses the agreed-upon intent of the parties, this Court will give effect to such intent. *Id.* When the resolution of the issue depends upon the interpretation of documentary evidence, this Court is in as good a position as the trial court to interpret the evidence. *City of Raton v. Vermejo Conservancy Dist.*, 101 N.M. 95, 103, 678 P.2d 1170, 1178 (1984).

We hold that the contract between the parties unambiguously required Introspect to purchase furnishings for the Desert Hills project from Kirkpatrick. The contract explicitly states that the fee for Kirkpatrick's interior design services would be "included in the furnishings that would be purchased for the facility." This same provision provides that the furnishings would be "priced at retail less 35–45%." These terms are reasonably susceptible to only one interpretation: Kirkpatrick's design fee was to be generated from the sale of furnishings to Introspect. Thus, Introspect had an obligation to purchase furnishings from Kirkpatrick.

Introspect looks to a separate provision in the "services" portion of the contract to support its argument that the purchase of furnishings from Kirkpatrick was wholly optional. The provision, which was listed as one of 23 services to be provided under the contract, states that Kirkpatrick would "[p]urchase all furnishings [for Desert Hills], carpet, tile, etc. as requested by owner." Introspect argues that this provision should be interpreted to mean that no obligation to buy furnishings arose because Introspect did not specifically request furnishings from Kirkpatrick. We find this to be a strained interpretation of the contract between the parties and inconsistent with the contract language. *See Gardner-Zemke Co. v. State*, 109 N.M. 729, 734, 790 P.2d 1010, 1015 (1990). To make a reasonable interpretation of a contract, "the language of the entire contract must be considered, and selected portions cannot support a claim of ambiguity." *Id.* To hold that the words "as requested by owner" relieve Introspect of any obligation to purchase furnishings would require us to ignore the express terms of the contract, which specifically call for Kirkpatrick's design fee to be raised from the sale of furnishings. The contract, considered as a whole, clearly required Introspect to purchase furnishings from Kirkpatrick.

**2.** Although decided prior to *Bonebrake*'s oft-quoted articulation of the "primary purpose" test, *Aluminum Co. of America v. Electro Flo Corp.*, 451 F.2d 1115 (10th Cir.1971), provides a helpful example of a mixed contract predominately for the sale of goods with design services incident thereto. Comparison between the mixed contract in *Aluminum Co. of America* and the contract in the instant case illustrates the distinction between mixed contracts primarily for the sale of goods and mixed contracts where design services predominate.

In raising a second argument that it had no obligation to purchase furnishings, Introspect maintains that the $12,000 it paid to Kirkpatrick during the beginning stages of the Desert Hills project constituted payment in full for her design services. This argument contradicts the clear language of the contract and, if accepted, would require this Court to create a new agreement between the parties. This we will not do. *See Montoya v. Villa Linda Mall, Ltd.*, 110 N.M. 128, 129, 793 P.2d 258, 259 (1990). The terms of the contract state that the initial $12,000 paid would be deducted from the final design fee generated from the sale of furnishings. These terms reveal that the $12,000 paid during the early stages of the project constituted prepayment of part of the total design fee and was never intended to constitute the design fee in its entirety.

Finally, Introspect argues that the contract should not be enforced because the contract, lacking a specific quantity term, imposes an obligation upon Introspect to purchase goods which it never agreed to buy. Introspect's argument suggests that enforcement of its contract with Kirkpatrick perpetrates the very evil sought to be averted by the UCC's Statute of Frauds, which seeks to prevent the "enforcement of alleged promises that were never made," 2 Ronald A. Anderson, *Uniform Commercial Code*, § 2–201:5, at 14 (3d ed. 1982), in part by requiring that a contract for the sale of goods contain a quantity term. While Article 2 of the UCC does not apply to the mixed contract in this case, we nevertheless address Introspect's argument that enforcement of the contract effectuates a sale of goods that it never agreed to purchase.

One inherent aspect of the contract between the parties was that the specific types and quantities of furnishings needed for Desert Hills were not ascertainable until after the interior designs were created. The contract contemplated that the types and quantities of furnishings to be purchased for Desert Hills would be determined after the development of the interior designs. The furnishings that Introspect was to purchase for Desert Hills were to be ascertained according to a final design plan, subject to Introspect's approval.

Pursuant to this scheme, the contract first required Kirkpatrick to design the interior of Desert Hills and to specify the furnishings for the facility after Introspect's initial payment of $6,000. The contract then required Introspect to examine and approve Kirkpatrick's "interior specifications, selections and drawings" before making a second $6,000 payment. Implicit in Introspect's opportunity to approve of Kirkpatrick's selections and specifications at this stage of the project was the opportunity for Introspect to reject Kirkpatrick's specifications, in all or in part, and withhold payment of the second $6,000 until the parties could reach an agreement on the types and amounts of furnishings to be used in the Desert Hills facility. Hence, the fact that Kirkpatrick's selected furnishings were ultimately subject to Introspect's approval served to protect Introspect from being forced to purchase unspecified or unknown quantities of furnishings.

While we hold that the terms of the contract required Introspect to purchase furnishings from Kirkpatrick and that the contract provided Introspect with the opportunity to inspect and approve of Kirkpatrick's suggested furnishings prior to purchase, resolution of these issues does not dispose of this case. Because the trial court rendered judgment on the pleadings pursuant to Rule 12(B)(6), many factual questions remain unanswered.

For example, the contract called for Introspect to approve of Kirkpatrick's specified furnishings prior to making a second $6,000 payment. Introspect, however, made a single payment of $12,000 at the beginning of the project and may not have had the opportunity to approve of Kirkpatrick's designs and selections as contemplated by the contract. Thus, a factual question is presented about whether the parties ever finalized an agreement about the types and amounts of furnishings Introspect was to purchase for Desert Hills. A letter mailed by Introspect to Kirkpatrick attempted to make changes to certain furnishings to be purchased for Desert Hills

and provides strong indication that the parties had either previously agreed to the furnishings to be purchased or were in the process of doing so at the time the letter was sent. Nonetheless, this letter does not clarify the nature and terms of the agreement between Kirkpatrick and Introspect, and a factual inquiry will need to be made at the trial court level in order to ascertain the complete agreement between the parties.

Furthermore, Introspect has asserted several counterclaims in its answer to Kirkpatrick's complaint which raise factual issues about the conduct of the parties and the circumstances surrounding the creation and performance of the contract.[3] Resolution of these counterclaims may even justify Introspect's noncompliance with the terms of the contract in this case. It is well-settled that an appellate court will not determine questions of fact on appeal. *See Western Bank v. Fluid Assets Dev. Corp.*, 111 N.M. 458, 460, 806 P.2d 1048, 1050 (1991); *Watson Land Co. v. Lucero*, 85 N.M. 776, 778, 517 P.2d 1302, 1304 (1974). Thus, we remand the case to the trial court for a trial on the merits to determine whether Introspect breached the contract between the parties and to determine resulting damages to Kirkpatrick in the event that Introspect is found to have breached the contract.

## IV

Kirkpatrick maintains that the trial court erred by not considering the sufficiency of the other counts raised in her complaint. We agree. Separate causes of action with distinct theories of liability must be separately evaluated. *See Trujillo v. Berry*, 106 N.M. 86, 88, 738 P.2d 1331, 1333 (Ct.App.), *cert. denied sub nom.*, 106 N.M. 24, 738 P.2d 518 (1987). Review of the record and proceedings below reveal

that although Introspect moved to dismiss all counts alleged in Kirkpatrick's complaint, the parties only addressed the legal sufficiency of Kirkpatrick's breach of contract claim. The trial court did not evaluate the sufficiency of Kirkpatrick's other counts at any point during the proceedings. We cannot say that Kirkpatrick failed to state a claim upon which relief can be granted as to these alternative counts without the trial court conducting a separate assessment of each distinct claim. Therefore, the trial court erred by dismissing Kirkpatrick's entire complaint. We remand this case for consideration of her alternative claims.

## V

We next examine whether the trial court misapplied SCRA 1986, 1–054(C)(1) ("Rule 54(C)(1)").[4] After the trial court made a preliminary ruling to grant Introspect's motion to dismiss, Kirkpatrick moved to have the trial court enter final judgment under Rule 54(C)(1) to facilitate immediate appeal and alternatively, for leave to amend her complaint. The trial court denied Kirkpatrick's request to amend, dismissed all of Kirkpatrick's claims, and certified the claims as final for immediate review under Rule 54(C)(1).

We believe the trial court misapplied Rule 54(C)(1). The rule states that when trying a lawsuit involving multiple claims, a trial court may "enter a final judgment as to one or more *but fewer than all of the claims....*" SCRA 1986, 1–054(C)(1) (emphasis added). The purpose behind entering final judgment "as to one or more but fewer than all of the claims" is to facilitate immediate appeal of separate claims in those cases where injustice would result if appeal on the separate claims is postponed until the entire case has been finally adjudicated. *See* 10 Charles A.

---

**3.** In its answer to Kirkpatrick's complaint, Introspect asserted counterclaims for fraud, misrepresentation, unfair and deceptive trade practices, breach of fiduciary duty, and breach of contract.

**4.** Because Fed.R.Civ.P. 54(b) and SCRA 1986, 1–054(C)(1) treat the entry of final judgment for

cases involving multiple claims in a substantially similar manner, we consider materials interpreting the multiple claim aspect of Fed.R.Civ.P. 54(b) helpful when construing SCRA 1986, 1–054(C)(1). *See Lowery v. Atterbury*, 113 N.M. 71, 73, 823 P.2d 313, 315 (1992).

Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2654, at 35 (1983). The rule does not apply to cases in which all the claims in a lawsuit have been finally decided because immediate appeal is already available as a result of final judgment on all the issues in the case. *See id.,* § 2656, at 55. The trial court's certification of all of Kirkpatrick's claims pursuant to New Mexico Rule 54(C)(1) violated the express language and purpose of the Rule.

The trial court should have granted Kirkpatrick leave to amend. Pleadings are meant to facilitate, rather than deter, the resolution of litigation on the merits. *Dale J. Bellamah Corp. v. City of Santa Fe,* 88 N.M. 288, 291, 540 P.2d 218, 221 (1975) (citing 3 J. Moore, *Federal Practice* ¶ 15.02 (2d ed. 1974)). Consequently, "[a]mendments to pleadings are favored, and should be liberally permitted in the furtherance of justice." *First Nat'l Bank of Santa Fe v. Southwest Yacht & Marine Supply Corp.,* 101 N.M. 431, 434, 684 P.2d 517, 520 (1984). The record discloses that Kirkpatrick's counsel repeatedly asked for leave to amend during the course of a hearing on whether to certify Kirkpatrick's case for appeal or, alternatively, to permit her complaint to be amended. Despite these arguments and Rule 15's admonition that "leave shall be freely given when justice so requires," SCRA 1986, 1–015(A) (Repl.Pamp. 1992), the trial court denied the motion to amend and entered final judgment to facilitate immediate appeal for the stated purpose of getting an advisory opinion from this Court on the legal issues involved. Denying leave to amend has resulted in a waste of judicial resources because the case must now be remanded for factual determinations that should have been conducted by the trial court prior to dispatching the case to this Court on appeal.

## VI

Finally, Introspect raises arguments that the contract is unenforceable due to a lack of mutuality of obligations and that Kirkpatrick's complaint is barred by the doctrine of accord and satisfaction. We have examined these issues and find them to be without merit. The judgment and order of the district court is REVERSED, and the case is REMANDED for further proceedings consistent with this opinion.

IT IS SO ORDERED.

MONTGOMERY and FROST, JJ., concur.